George W. ROGERS and Grace D. Rogers, Plaintiffs in Error,

v.

**OKLAHOMA TAX COMMISSION,** Defendant in Error.

No. 42258.

Supreme Court of Oklahoma.

Jan. 20, 1970.

Rehearing Denied March 10, 1970.

51657 denying their protest to an assessment of additional State income taxes against them.

For a number of years prior to September 29, 1960, plaintiffs in error, Oklahoma residents, hereinafter referred to both as "taxpayers" and "protestants", owned two adjoining properties, totaling 313 acres of land, near what was then Oklahoma City's Municipal Air Port, which was some distance from any of said City's populated residential areas. On that date, under threat of condemnation proceedings to enable construction of an enlarged air port, the couple sold these properties to said City. The net proceeds of said sale amounted to the sum of $552,327.15. The same year, these taxpayers reinvested $529,993.93 of this sum in certain urban, commercial properties in Oklahoma City and Norman, which included structures suitable for various retail and wholesale business establishments.

On their joint State income tax return, and amended return, for the year 1960, the taxpayers reported only that part of their capital gains from said sale that had not been reinvested, or $22,333.22, as taxable income, and paid the tax on it, as such. Thereafter, the Income Tax Division of defendant in error, hereinafter referred to merely as the "Commission", audited said return, re-figured the tax—including the $529,993.93 as taxable income in its calculation—and assessed the sum of $14,050.58 as additional income taxes against the taxpayers. Taxpayers thereafter paid said additional sum, but filed a protest against said assessment at the Commission.

The question at issue before the Commission at the subsequent hearing on the taxpayers' said protest was whether or not the $529,993.93 of sale proceeds, reinvested as aforesaid, within one year of their above described sale, was within the statutory limit on "recognized" capital gains, under the emphasized portion of 68 O.S.1959 Supp., § 883(*o*), which reads, in part, as follows:

"(*o*) (1) If a gain * * * is the result of property involuntarily convert-

George F. Saunders, Oklahoma City, for plaintiffs in error.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This is an appeal by plaintiffs in error from the defendant in error's Order No.

ed after January 1, 1959, due to its * * * condemnation or threat or imminence thereof, and the property is replaced by the purchase of *other property similar or related in service or use to the property so converted*, * * *, and such acquisition is made within one (1) year after the close of the taxable year in which any part of the gain upon conversion is first realized, shall, at the election of the taxpayer, be recognized in the following manner:

"(A) If the property is replaced during the taxable year, the recognized gain shall be limited to that portion of the proceeds not so reinvested, * * *;

"* * *"

The evidence introduced at the hearing on the protest revealed, among others, the facts hereinafter delineated. The 313 acres of land which protestants sold the City, under threatened condemnation, as above indicated, had three frame houses, a barn, a silo, and a cattle feeding shed—all vacant —on it, when the taxpayer, Mrs. Rogers, and her former husband, a Mr. Newsom, later deceased, purchased it in 1943, with the contemplation that Oklahoma City would expand toward the Air Port and enhance the property's value. This land, with its buildings, will hereinafter be referred to as the "converted property". Though the Newsoms owned and operated a business called the Bama Pie Company, at which they worked "full time", they then moved into one of the houses on the converted property. Thereafter, they obtained a tenant to use the land for farming and/or stock raising, with the hope that their income therefrom might help pay for the property's purchase price. After a year or two, this operation was given up; and most of the farming materials had been disposed of when Newsom later died in 1949.

None of the property was again rented for any farming, or rural, enterprises until after Mrs. Rogers, then Newsom, married Mr. Rogers in April, 1952. Thereafter, the tillable soil of the acreage was rented to tenants, who raised wheat and cane "on the shares", while other portions of the land were leased for pasturing stock. The taxpayers rented two of the houses on the property to other tenants for cash rentals, until they built themselves a new brick house there, and moved, out of the third frame house, into it, in 1954. Thereafter, all three of the frame, or wooden, houses were rented to such tenants.

In the aforementioned Order No. 51657, supra, which the Commission entered after the close of the hearing, it referred to the protestants' converted property as a "farm", and specifically found that the property they had purchased to replace it was not "similar or related in service or use" to the condemned property under the hereinbefore quoted wording of Section 883(*o*) (which is identical in both that section and the one referred to in said Order as "68 O.S.Supp. 1965, Sec. 2310(*o*)"), and stated:

"The only similarity between the reinvestment property and the farm is that most of the farm was either rented for cash or for a share of the crops, and the commercial buildings are rented for commercial purposes. This is not sufficient to invoke the statute (2310(*o*) supra) allowing non-recognition on the gain in the sale of the farm."

The "JUDGMENT" portion of the Commission's Order denied the protest, holding that the protestants' "replacement investment in six commercial buildings * * * did not and does not constitute a sufficient continuity of investment to justify recognition of capital gain, and therefore, taxpayers are not entitled to any deduction, but must pay the taxes." The remainder of the order is as follows:

"It is the further order and judgment of the Tax Commission that the application for waiver of penalty and such interest as is shown by the assessment to have accumulated is hereby denied."

In urging that the Commission erred in holding that the reinvestment property (in which they reinvested the bulk of the pro-

ceeds from the sale of their original, or converted, property, as aforesaid) was not "similar or related in service or use" to the converted property, protestants contend that said trial tribunal should have applied the "functional use test" described in Liant Record, Inc. v. Commissioner of Internal Revenue, 2 Cir., 303 F.2d 326, as they say the Internal Revenue Service is doing in regard to the same wording in Section 1033 (a) of the Internal Revenue Code of 1954, as evidenced by its Revenue Ruling 64–237, included in an "Appendix" to their brief. They say that, under that test, the question of whether or not the reinvestment property is "similar or related in service or use" is determined by whether or not the services and uses of the converted property, in relation to the taxpayer-owners, were similar to those of the reinvestment property, in relation to them; and they argue, in substance, that if the Commission had correctly made such a determination regarding the properties involved here, it would have found the taxpayers entitled to qualify for the special tax treatment provided in Sections 883(o) and 2310(o), supra. They point out that, on the basis of the testimony at the hearing before the Commission, both the farm (disregarding that portion thereof used as their residence, which, it was agreed at the hearing, could be done) and the urban commercial properties (bought with its sale proceeds) were purchased as investments, and that the services they performed, as to both said rural and urban properties, consisted of obtaining tenants, collecting rents, paying taxes, and making repairs, when necessary.

The Commission relies principally upon Filippini v. United States, in which the U. S. District Court's opinion, appearing at 200 F.Supp. 286, was affirmed by the U. S. Circuit Court of Appeals' opinion, appearing at 318 F.2d 841. We have examined both opinions in this case, as well as the one in Liant, supra, and other cases cited by the adversaries, such as Pohn v. C. I. R., 7 Cir., 309 F.2d 427, and Loco

Realty Co. v. Commissioner, 8 Cir., 306 F. 2d 207. Without discussing all of the cases in detail, we think it sufficient to say that they indicate some variety of opinion among the various Federal Courts as to whether the "functional use" test, or the "same general class" test, or a combination of both tests, should be used in cases involving the question before us. They also indicate some differences in their respective applications of the particular test used. However, it is our opinion that whether the general class test, or the functional use test, is applied to the evidence of this case, the result reached is no different from that reached by the trial tribunal. Not only was the protestants' original, or converted, property—being rural in character—not of the same general class, as the reinvestment, or replacement, property, but these two different classes of property were not similar, or related, in respect to their taxpayer-owners. We have thoroughly examined all of the evidence introduced before the Commission, and, although not attempting to describe it all in this opinion, we think it clearly shows that the original, or farm, property, was purchased primarily for speculative purposes, while there was no indication that the reinvestment, or urban, property, now belonging to protestants, was purchased for any other purpose than the production of rental income. The evidence further shows that the services performed by the protestants in maintaining these two kinds of investments, or classes of property, differ to the degree that might be expected, to serve the different purposes for which they were made.

█ Our opinion that the taxpayers' original property, and reinvestment property, was neither of "like kind" or "similar or related in service or use", renders it unnecessary to discuss their arguments in the "Second Issue" of their brief.

Under a "Third Issue", the protestants argue, in substance, that the Commission erred in denying their application for waiver of the interest on the additional tax in-

volved, and the penalty assessed against them, for its not having been paid earlier. They indicate the interest, they refer to, accrued between the date their protest was filed and the day—almost two years later —that notice of its hearing was filed. In response, the Commission points out that the interest sum involved is more than $2,000.00, and cites the statutory provision, which appears as Section 220 in 68 O.S. 1967 Supp., and as Section 219 in 68 O.S. 1965 Supp., as rendering any waiver of "such interest or penalties in excess of Five Hundred ($500.00) Dollars" not effective "unless approved by one of the judges of the District Court of Oklahoma County after a full hearing thereon."

The Commission's argument, in support of its position—as does the cited statute—pertains only to its *waiver* of an unadjudicated claim or protest, and does not reach controversies, concerning such matters, that are settled by court determination. We hold that the cited statute does not affect this Court's power to order a remittitur of the interest and penalty in this case; and, considering all of the circumstances shown here, it is our opinion that the taxpayers should not be burdened with the penalty and interest assessed against them by the Commission's order; and we so hold.

In accord with the foregoing, the order and/or judgment appealed from is affirmed, upon condition that the Oklahoma Tax Commission remit all sums of penalty and interest assessed against the taxpayers on the State income taxes here involved, within 10 days after this opinion becomes final. It is so ordered.

DAVISON, JACKSON, HODGES, LAVENDER, and McINERNEY, JJ., concur.

IRWIN, C. J., concurs in result.

BERRY, V. C. J., and WILLIAMS, J., dissent.