**CHICKASHA FEDERAL SAVINGS AND LOAN ASSOCIATION et al. and Norman Savings and Loan Association, a State Savings and Loan Association, Appellees,**

v.

**OKLAHOMA TAX COMMISSION, Appellant.**

No. 46050.

Supreme Court of Oklahoma.

May 14, 1974.

Rehearing Denied Dec. 10, 1974.

McAfee, Taft, Cates, Mark, Bond & Rucks by Richard G. Taft and Frank D. Hill, Oklahoma City, for Chickasha Federal Savings & Loan Ass'n. et al.

Benedum & Benedum by Tom R. Benedum, Norman, for Norman Savings and Loan Assn.

Albert D. Lynn, E. J. Armstrong, Lester D. Hoyt, John T. Weller, Legal Intern, Oklahoma City, for appellant.

BERRY, Justice.

Appellees are federal savings and loan associations and an Oklahoma savings and loan association which is insured by the Federal Savings and Loan Insurance Corporation. In computing their Oklahoma taxable income for the fiscal year ending June 30, 1971, appellees included amounts paid to holders of "savings deposits" and "savings" or "share accounts" for use of deposited funds. They paid taxes on these amounts under protest. They then brought this action to recover the taxes paid under protest. The trial court entered judgment for appellees and the Tax Commission appeals.

The Home Owners Loan Act of 1933 and regulations passed pursuant thereto provide for organization and regulation of federal savings and loan institutions. 12 U.S.C. §§ 1461–1468, 12 C.F.R., Parts 541 et seq.

The Oklahoma Savings and Loan Code of 1970, 18 O.S.1971 § 381.1 et seq., provides for organization and regulation of Oklahoma Savings and Loan Associations.

Federal statutes and regulations also govern insurance of state savings and loan associations by the Federal Savings and Loan Insurance Corporation, 12 U.S.C. § 1724 et seq.; 12 C.F.R., Parts 561 et seq.

A state may tax the income of federal savings and loan associations provided the tax imposed is not greater than the tax it imposes upon similar local associations. 12 U.S.C. § 1464(h).

The Oklahoma Income Tax Act provides that "Oklahoma Taxable Income" is taxable income reported [or which would have been reported had the taxpayer filed a return] to the federal government adjusted further as provided in the Oklahoma Income Tax Act. 68 O.S.1971 § 2353(12).

68 O.S.1971 § 2358B(4) sets out the following adjustment to be made by savings and loan associations in determining Oklahoma taxable income:

"In the case of savings and loan associations located in Oklahoma, there shall be added to taxable income the amount of any dividend or distribution of earnings to shareholders, members or certificate holders of such association deducted in arriving at taxable income for such taxable year."

In computing their federal taxable income appellees deducted the payments in question. This was done pursuant to 26 U.S.C. § 591. Section 591 provides that in computing federal taxable income savings and loan associations are entitled to deduct amounts paid or credited to accounts of depositors or holders of accounts as "dividends or interest" on their deposits or withdrawable accounts.

Furthermore, these payments were made to members of the associations. All shareholders, certificate holders, savings accounts holders, and savings deposit holders in a savings and loan association are members of the association. 18 O.S.1971 § 381.2(10)–(13), 12 C.F.R., Parts 541–545.

Therefore, the sole question presented is whether such payments are "any dividend or distribution of earnings" within the meaning of § 2358B(4), supra.

The quoted phrase is not defined in the Oklahoma Income Tax Act.

Appellees contend the payments in question constitute payments of interest, rather than "dividends or distributions of earnings."

Both federal and state statutes allow savings and loan associations to become deposit associations by adopting certain charter amendments. 12 C.F.R., Part 545.-1–2(a); 18 O.S.1971 § 381.50.

Each appellee which is a federal association has qualified as a deposit association under federal regulations. The Oklahoma association has qualified as a deposit association under applicable Oklahoma statutes.

Appellees contend applicable statutes and regulations create a debtor-creditor relationship between a deposit association and holders of savings deposits. As a general rule payments to creditors for use of borrowed funds constitute interest. Federal regulations applicable to federal deposit associations refer to payments to holders of savings deposits for use of deposited funds as interest.

Appellees contend they are entitled to deduct these sums in computing federal taxable income because § 591, supra, allows them to deduct amounts paid as interest or dividends on deposits. They contend § 2358B(4) does not require them to add these amounts in computing Oklahoma taxable income because the term "dividend or distribution of earnings" refers only to payments to holders of equity interests and does not include interest payments made to creditors.

Appellees further contend applicable statutes and regulations treat share accounts and savings deposits in deposit associations the same and payments to holders of share accounts in deposit associations should therefore be treated as payments of interest.

The Tax Commission contends the payments constitute a distribution of earnings regardless of whether they are designated as payments of interest or dividends. In support of this contention the Commission cites 18 O.S.1971 § 381.2(6), of the Oklahoma Savings and Loan Code. This section provides:

"'Earnings' means the money payable or to be credited to holders of savings accounts by an association as payment for the use of the funds which constitute such accounts. Earnings on savings accounts in a deposit association may be designated as interest, and earnings on other savings accounts may be designated as dividends."

The term savings account includes both savings deposits and share accounts. 18 O.S.1971 § 381.2(11)(12) and (13). Therefore, § 381.2(6) refers to payments

by deposit associations to holders of share accounts and savings deposits as distributions of earnings to members regardless of whether the payments are designated as dividends or interest. See 18 O.S.1971 § 381.49.

The trial court found:

1. The relationship between deposit associations and their holders of savings deposits and owners of share accounts is one of debtor and creditor;

2. There is no distinction between payments by deposit associations to holders of savings deposits and owners of share accounts;

3. Payments to holders of savings deposits and owners of share accounts constitute interest;

4. The definition of earnings set out in 18 O.S.1971 § 381.2(6) is inapposite in this case because it is not applicable to Federal Savings and Loan Associations and State Savings and Loan Associations insured by the Federal Savings and Loan Insurance Corporation;

5. § 2358B(4) is a taxing statute and must be strictly construed against the State of Oklahoma;

6. Payments of interest by appellees to holders of savings deposits and owners of share accounts do not constitute "any dividend or distribution of earnings" within the meaning of § 2358B(4).

We disagree.

In construing a statute it is presumed every provision was intended to have some useful purpose and all provisions should be given effect. Equitable Royalty Corporation v. State, Okl., 352 P.2d 365.

Payments to holders of savings accounts and savings deposits for use of deposited funds are essentially the only payments made by savings and loan associations to members.

Therefore, we conclude the legislature intended § 2358B(4) to at least require some savings and loan associations to add some amounts paid to members for use of deposited funds to their federal taxable income in computing Oklahoma taxable income.

If the definition of earnings contained in § 381.2(6), supra, is applied to § 2358 B(4), supra, all savings and loan associations will be required to add all sums paid to holders of savings accounts and savings deposits for use of deposited funds to federal taxable income in order to compute Oklahoma taxable income. This will give a useful effect to § 2358B(4) and will result in non-discriminatory taxation.

Where a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention clearly appears. 25 O.S.1971 § 2; Stone v. Hodges, Okl., 435 P.2d 165; Palmer Oil Corp. v. Phillips Petroleum Co., 204 Okl. 543, 231 P.2d 997, appeal dismissed, 343 U. S. 390, 72 S.Ct. 842, 96 L.Ed. 1022.

Therefore, regardless of whether the provisions of the Oklahoma Savings and Loan Code are applicable to federal or federally insured associations, we conclude the definition of earnings set out in § 381.2(6) should be applied to 68 O.S.1971 § 2358 B(4) unless a contrary intent clearly appears.

We find no such contrary intent. The existing federal regulations do require federal deposit associations to pay "interest" upon savings deposits.

However, prior to 1968, § 1464 of the federal Act allowed federal associations to raise capital through shares which were generally referred to as savings accounts. Section 1464 specifically prohibited federal associations from accepting deposits.

Since the savings accounts were referred to as shares rather than deposits, the rate of earnings to be paid on savings accounts was not computed until after the earnings period. The payments were referred to as dividends or earnings and were not referred to as interest. In this regard Pfeiffer, New Savings Instruments for Feder-

als, 25 Business Lawyer 525, states at page 526:

"Technically bank deposits received 'interest' while savers in savings and loan institutions received 'dividends.' The technical difference was that interest was a contractual promise in advance of the earnings period to pay a specified rate to the depositors while dividends had to be declared by the savings' associations board of directors before they became a legal obligation to the saver."

The Oklahoma statutes in effect in 1968 also used share and dividend terminology with reference to savings and loan associations.

Therefore, in 1968 the term "any dividend or distribution of earnings" would have included all payments by savings and loan associations to members for use of their funds.

12 U.S.C. § 1464 was amended during 1968 to allow federal savings and loan associations to raise capital through savings deposits subject to the regulation of the Federal Home Loan Board.

The Board implemented the statutory provision by adopting regulations. 12 C.F.R. § 545.1 et seq. These regulations allow certain federal associations to become deposit associations. Deposit associations may raise capital through savings deposits. They are required to pay interest on savings deposits. The board of directors of the association is required to set the rate of interest payable on these deposits during the month preceding the commencement of the interest earning period. Deposit associations may also have fixed term deposits with fixed interest rates. 12 C.F.R., Part 545.1–4. Interest on such deposits is negotiated on an individual basis prior to acceptance of the deposit.

In 1969 Oklahoma adopted statutory provisions which were similar to the federal regulations. S.L.1969, Ch. 147. That Act authorized certain associations to become deposit associations. Section 2 of the Act defined earnings as follows:

" 'Earnings' means that part of the sources available for payment of earnings of an association which is declared payable on share accounts and savings deposits from time to time by the Board of Directors. Earnings may also be referred to as dividends or interest."

The 1969 Act was repealed by the "Oklahoma Savings and Loan Code of 1970", 18 O.S.1971 § 381.1 et seq. This Act also allows certain associations to become deposit associations. The definition of earnings contained therein also indicates the legislature intended to include dividends and interest within the term "earnings." 18 O.S.1971 § 381.2(6), supra.

Therefore, it is obvious the Oklahoma legislature has always used the term "earnings" to refer to all payments by savings and loan associations to members for use of their funds regardless of whether such payments are designated as interest or dividends.

Furthermore, in paragraphs 5 and 6 of the syllabus in Magnolia Pipeline Co. v. Oklahoma Tax Commission, 196 Okl. 633, 167 P.2d 884, we held:

"5. In construing statutes the courts should not presume that the Legislature has intended to unjustly discriminate between different cases of the same kind, but should adopt that construction which will insure the uniform operation of the statute."

"6. In construing ambiguous tax statutes the court should adopt that interpretation which lays the burden of the tax uniformly on all those similarly situated."

Therefore, we cannot presume the legislature intended to discriminate between deposit and non-deposit associations for purposes of taxation unless there is some valid reason why the legislature might have desired to treat the two types of associations differently for purposes of taxation.

As noted above deposit associations are authorized to raise capital through savings deposits and to pay interest on savings deposits.

A deposit association may not accept additional share accounts. Share accounts in existence when an association becomes a deposit association remain share accounts until exchanged for savings deposits.

Holders of savings deposits and share accounts in deposit associations have equal voting and other membership rights, and are entitled to equal priority upon dissolution or liquidation. Upon liquidation they are entitled to the same priority as general creditors.

Holders of share accounts in non-deposit associations have voting and membership rights. They are not specifically granted the same priority as general creditors upon dissolution or liquidation. Non-deposit associations are not required to fix the rate of earnings upon share accounts prior to the earnings period.

We find no clear legislative intent to distinguish between appellees and other types of savings and loan associations for purposes of taxation and we find no valid reason why such a distinction should be made.

Appellees contend that commercial banks are allowed to fully deduct payments of interest on savings deposits in determining Oklahoma taxable income. They contend to deny this right to savings and loan associations would be discriminatory.

A valid distinction can be drawn between savings and loan associations and banks. Banks are owned by stockholders who invest capital in the bank and control operation of the bank. As a general rule dividends paid to stockholders are not deductible in computing the bank's Oklahoma taxable income. Savings depositors are strictly creditors of the bank and have no control over its operations.

Savings and loan associations obtain their capital solely from ·deposits of members. The depositors ·have complete control over operation of the association.

Appellees further contend taxing statutes are to be strictly construed against the state and any doubt concerning the tax law is to be resolved in favor of the party upon whom the tax burden is sought to be imposed. National Bank of Tulsa v. Oklahoma Tax Commission, Okl., 380 P.2d 542. Nevertheless, tax statutes are to receive a reasonable construction with a view to carrying out their purpose and intent. Olson v. Oklahoma Tax Commission, 198 Okl. 607, 180 P.2d 622.

We conclude the only reasonable construction of § 2358B(4) is that all savings and loan associations are required to add amounts paid to "shareholders, members or certificate holders" for use of deposited funds to federal taxable income in order to arrive at Oklahoma taxable income.

Therefore, payments by appellee deposit associations to holders of savings deposits and share accounts constitute payments of a "dividend or distribution of earnings" within the meaning of § 2358B(4), supra. The judgment of the trial court is reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, HODGES, LAVENDER, BARNES and SIMMS, JJ., concur.