**GETTY OIL COMPANY, Appellant,**

v.

**OKLAHOMA TAX COMMISSION,
Appellee.**

**No. 48698.**

Supreme Court of Oklahoma.

Feb. 1, 1977.

As Corrected April 21, 1977.

On Rehearing April 26, 1977.

---

Bruce H. Johnson, Randall D. Mock, James H. Holloman, Jr., Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant.

Donald B. Nevard, Gen. Counsel, Stanley J. Alexander, Clyde E. Fosdyke, and F. Karen Grethen, Oklahoma City, for appellee.

DOOLIN, Justice.

Getty Oil Company (Getty) is a Delaware Corporation engaged primarily in oil production throughout the United States and

other countries, qualified to do business in Oklahoma. Getty paid, under protest, an additional assessment of $58,000.00 in Oklahoma income taxes for the taxable year of 1971. Getty was disallowed a carryover deduction claimed on its 1971 Oklahoma tax return for net operating losses sustained in the previous five years. The Oklahoma Tax Commission (Commission) after a hearing denied the protest and Getty appeals.

Prior to 1971, Oklahoma did not allow a taxpayer to claim a deduction for a net operating loss carried over from a previous year. Effective in 1971, Oklahoma adopted the "Oklahoma Income Tax Act" which incorporated as a base for Oklahoma income taxation, the United States Internal Revenue Code. The Int.Rev.Code of 1954 § 172 permits a deduction for carryovers of net operating losses for the prior five year period. 68 O.S.1971 § 2353(12), (13) provide:

12. "Oklahoma taxable income" means "taxable income" as reported (or as would have been reported by the taxpayer had a return been filed) to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code, adjusted further as hereinafter provided;

13. "Oklahoma adjusted gross income" means "adjusted gross income" as reported to the federal government (or as would have been reported by the taxpayer had a return been filed), or in the event of adjustments thereby by the federal government as finally ascertained under the Internal Revenue Code, adjusted further as hereinafter provided;

The further adjustments referred to in these statutes are enumerated in 68 O.S. 1971 § 2358. Those parts material to this appeal are as follows:

§ 2358 *"Adjustments to arrive at Oklahoma taxable income and Oklahoma adjusted gross income.* A. Taxable income and, where use of adjusted gross income is necessary (i. e. required by this act), adjusted gross income shall be adjusted as follows to arrive at Oklahoma taxable income and Oklahoma adjusted gross income:

1. There shall added * * *

2. There shall be deducted * * *

3. Net income (or loss) from a business activity, which is not a part of business carried on within and without the state of a unitary character, shall be separately allocated to the state in which such activity is conducted. Items of the following nature shall be allocated as indicated:

a. *income* from real and tangible personal property, such as rents, oil and mining production or royalties, and gains or losses from sales of such property, shall be allocated in accordance with the situs of such property;

b. *income* from intangible personal property, such as interest, dividends, patent or copyright royalties, and gains or losses from sales of such property, shall be allocated in accordance with the domiciliary situs of the taxpayer, except that:

(1) * * *

(2) * * *

c. allowable *deductions* attributable to items separately allocable in subparagraphs a and b hereof, whether or not such items of income were actually received, shall be allocated on the same basis as those items;

d. the amount of any net operating loss deduction *allowed* to a taxpayer *for federal income tax purposes* shall be reduced to an amount which is the same *portion* thereof as the loss from sources within this state (as determined under this section and Section 12 of this act) for the taxable year in which such loss is sustained is of the total loss for such year. (Emphasis supplied) * * * *"

Getty reports to Commission on the separate allocation method as opposed to the unitary method.[1] This involves reporting

1. The unitary method is stated by Getty in its brief as "an arithmetical formula based upon the average percentage obtained by dividing the taxpayer's property, payroll and sales in

profits and losses from activities in Oklahoma separately from income and losses from its activities outside Oklahoma.

In each of the years 1966 through 1970, Getty sustained losses over and above its net taxable income allocated to Oklahoma. In each of these years this net loss was offset and absorbed at the federal level by gains in other states, so that there was no net operating loss on the federal level for any of these years and thus no losses to carryover onto Getty's 1971 federal income tax return.

Getty claims the authority granted by § 172 of the Internal Revenue Code to carryover and deduct net operating losses from prior years is incorporated into the Oklahoma Tax Act by virtue of 68 O.S.1971 § 2353(3) which states:

"Any term used in this act shall have the same meaning as when used in a comparable context in the Internal Revenue Code, unless a different meaning is clearly required. For all taxable periods covered by this act, the tax status and all elections of all taxpayers covered by this act shall be the same for all purposes material hereto as they are for federal income tax purposes except when this act specifically provides otherwise."

Getty asserts the word "deductions" in 68 O.S.1971 § 2358(A)(3)(c) must include "carryover deductions" because "carryover deductions" are considered "deductions" by the Internal Revenue Code. Thus subsection (c) is the statutory authority for its claim for the deduction. Getty further submits subsection (d) of 68 O.S.1971 § 2358(A)(3) merely limits the allowed deduction to those losses attributable to activities in Oklahoma. Therefore because no federal net operating loss deduction was claimed on its federal income tax return for 1971, subsection (d) would have no application to Getty.

Commission's interpretation of 68 O.S. 1971 § 2358 is quite dissimilar. While agreeing subsection (d) has no application to Getty, Commission believes it does require a taxpayer to have claimed a net operating loss carryover *on his federal tax return for the year in which he claims such type loss on his state tax return.* Because Getty did not show a deduction for carryover losses on its 1971 federal return, it may not now deduct such losses on its Oklahoma return. See 68 O.S.1971 § 2358(A) (3) above cited as emphasized.

Getty's syllogistic logic at first glance appears to have merit. Internal Revenue Code allows net operating loss carryover deductions; Oklahoma has incorporated the Internal Revenue Code into its tax law; therefore Oklahoma allows net operating loss carryover deductions. However Getty's minor premise must be modified somewhat and expanded to read: Oklahoma has incorporated portions of the Internal Revenue Code into its tax law subject to certain statutory adjustments and limitations.

We find no statutory provision in Oklahoma tax law that specifically adopts *all* federally allowed deductions. 68 O.S. 1971 § 2353(12) defines "Oklahoma taxable income" as the "taxable income" shown on a taxpayer's federal return. Getty's 1971 federal taxable income did not reflect any deduction for carryover losses. "Taxable income" is the base figure upon which Oklahoma income tax is computed. This base figure is adjusted according to the provisions of 68 O.S.1971 § 2358. The adjustment authorized by § 2358(A)(3)(d) is directed to the situation where the carryover loss deduction claimed on the federal return included losses from activities in other states. If there is a carryover loss allowed on a taxpayer's federal return, the function of subsection (d) is to limit that figure to that portion attributable to activities carried on in Oklahoma. It was not the intent of the Legislature to create a deduction by this provision, but only to limit one already reflected on the federal return.

Oklahoma by its property, payroll and sales everywhere. It is used to allocate net income of a unitary character which cannot be sepa-

rately allocated based upon the situs of the business activities."

■ Prior to the 1971 act, Oklahoma allowed no carryover loss deductions. By incorporating "federal taxable income" into its new tax code, Oklahoma now permits carryover loss deductions if such deductions are reflected in the amount shown on the federal return as taxable income applying however ·the limitation of 68 O.S.1971 § 2358(A)(3)(d). If the Legislature had intended to allow a carryover deduction in other situations, it could have provided for such an adjustment: It did not do so.

■ While we recognize the rule that taxing statutes must be construed in favor of the taxpayer,[2] any change in the method of computing deductible losses for income tax purposes is within the province of the Legislature and should not be made by the courts. Deductions depend entirely upon legislative grace.[3]

■ It is agreed that net operating loss carryover deductions are allowed in Oklahoma where a taxpayer is allowed the deduction on his federal return. Getty claims the position advocated by Commission will generate a situation of unconstitutional statutory construction. It asserts allowing a carryover deduction to a taxpayer whose business is operated solely in Oklahoma, but not to a taxpayer who derives part of his income from other states, creates unconstitutionally arbitrary discrimination against non-resident taxpayers in the position of Getty, citing *Graham v. State Tax Commission*, 48 A.D.2d 444, 369 N.Y.S.2d 863 (1975). We do not agree. Here we deal with taxable income produced in Oklahoma by *any* taxpayer. The New York case dealt with difference in taxable income between *resident* and *non-resident* taxpayers.

■ Taxing statutes are frequently discriminatory,[4] but for an income tax classification to be constitutional, all that is required is that the classification and apportionments be reasonable and be related to the object of the tax action.[5] There is no discrimination in Oklahoma against a taxpayer solely because he, like Getty, is a non-resident. Had Getty been a resident of Oklahoma the tax consequences would have been the same.

■ Getty's argument the tax is an indirect tax on income from sources outside Oklahoma also fails. Although the tax may have a direct effect upon the total of Getty's income and thus an indirect effect upon his outside Oklahoma income, a state is not barred from levying an income tax upon income within its boundaries because of its indirect effect upon outside income.[6]

AFFIRMED.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and BARNES, JJ., concur.

SIMMS, J., concurs in result.

HODGES, C. J., dissents.

### SUPPLEMENTAL OPINION ON REHEARING

LAVENDER, Vice Chief Justice:

It has come to our attention that in our opinion of February 1, 1977, we failed to consider the appellant's Proposition VI which was a request for a remittitur of the interest on the additional income tax.

Because of the closeness of that determinative question of law involved, we have decided to allow the request for remittitur of the interest and it is so ordered. *Rogers v. Oklahoma Tax Commission*, Okl., 466 P.2d 650; 68 O.S.1971, § 220.

2. *Oklahoma Tax Commission v. McAfee*, 461 P.2d 602 (Okl.1969); *C. H. Leavell & Co. v. Oklahoma Tax Commission*, 450 P.2d 211 (Okl. 1968).

3. *Essley v. Oklahoma Tax Commission*, 196 Okl. 473, 168 P.2d 111 (1946).

4. See Dissenting opinion, *Sowders v. Oklahoma Tax Commission*, 552 P.2d 700 (Okl.1976).

5. *Walker v. Oklahoma Tax Commission*, 196 Okl. 207, 164 P.2d 242 (1945); *Sowders v. Oklahoma Tax Commission*, id.

6. *McCutchan v. Oklahoma Tax Commission*, 191 Okl. 578, 132 P.2d 337 (1943).

DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., dissents.