CONTINENTAL FEDERAL SAVINGS
AND LOAN ASSOCIATION, a
corporation, Appellant,

v.

OKLAHOMA TAX COMMISSION,
Appellee.

No. 51970.

Court of Appeals of Oklahoma,
Division No. 2.

July 10, 1979.

Rehearing Denied Sept. 25, 1979.

Released for Publication by Order of
Court of Appeals Oct. 25, 1979.

John T. Spradling, Erwin Alpern, Stephen P. Friot, D. Paul Tyson, Spradling, Stagner, Alpern, Friot & Jones, Oklahoma City, for appellant.

Marjorie Patmon, Clyde E. Fosdyke, Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

A taxpayer, Continental Federal Savings and Loan Association, appeals from an order of the Oklahoma Tax Commission denying a refund of income taxes paid in 1972 and 1973. Taxpayer claims that its right to the refund resulted from its carryback of a 1975 federal net operating loss. The question presented for review involves an interpretative application of the 1971 state revenue code.

I

The facts are not in dispute. Continental is an Oklahoma corporation deriving all of its income from within this state. In its 1972 and 1973 state and federal income tax returns Continental deducted, as interest expense, the money it distributed to its depositors for the use of their funds. In 1974 the Oklahoma Supreme Court decided, in *Chickasha Federal Savings and Loan Association v. Oklahoma Tax Commission,* Okl., 528 P.2d 1384 (1974), that such payments to depositors were not interest payments but dividends and consequently, unlike under the federal income tax law, were not deductible under Oklahoma income tax law. As a result, Continental, in March 1975, filed amended Oklahoma returns for 1972 and 1973 showing a substantial increase in tax liability. Then, in 1976, Continental reported for 1975 a taxable income in Oklahoma of $11,169,170—due to its inability to deduct $14,641,393 paid to depositors as "dividends"—based on a federally reported net operating loss of $2,331,067.

Through amended federal returns Continental carried the loss back to more profitable years—1972 and 1973. Then having, by the carryback, established lower federal taxable income figures for those years, taxpayer amended its state returns for the same years to reflect a lower oklahoma taxable income based on the newly adjusted federal figures. In both federal and state amended returns Continental sought refunds.

The Internal Revenue Service allowed the requested refunds. The Oklahoma Tax Commission, however, did not on the

ground that Continental, after reducing its 1975 Oklahoma taxable income to the extent of the full $2 million federal loss, was attempting, in effect, to carry back the same federal loss and deduct it a second time against its 1972 and 1973 state income. According to the commission there could be no such loss carry back under 68 O.S.1971, § 2358(A)(3)(d) unless taxpayer sustained an "Oklahoma net operating loss" in the two prior years. Whether or not the commission is correct, then, is the nuclear issue dividing the parties.

## II

 We hold the commission misinterpreted the meaning and thrust of § 2358(A)(3)(d)[1] and as a result misapplied the statute when it concluded the provision pertained to taxpayers, like Continental, whose net income or loss is derived from business activity carried on solely within this state. When the poorly written and ambiguous provisions of § 2358(A)(3)(d) are read in their entirety, it becomes obvious that subparagraph (A)(3) is an "allocation" statute aimed at establishing a fair formula for allocating to this state the portion attributable to Oklahoma-related activity of the total net income or loss realized by a

taxpayer carrying on a multistate business.[2] The section does not, therefore, relate to non-allocable situations and consequently cannot affect the Oklahoma net operating income or loss of a taxpayer, such as Continental, who engages only in intrastate business. Obviously, since all of Continental's federal net operating loss was incurred in Oklahoma there exists nothing allocable as between this and some other distributive jurisdiction.

## III

It remains to be determined, however, whether or not taxpayer may have Oklahoma taxable income and still have what amounts to a net operating loss carry back deduction on the two previous annual returns in question. The commission argues it may not because of two requirements set forth in *Getty Oil Co. v. Oklahoma Tax Commission*, Okl., 563 P.2d 627 (1977) which must be met before a taxpayer can sustain a state net operating loss deduction; namely, a taxpayer must (1) suffer an Oklahoma net operating loss as well as a federal one and (2) show the deduction was allowed by the federal government. The commission concludes that because Continental did not

---

1. Section 2358 reads in pertinent part as follows:

 "§ 2358. Adjustments to arrive at Oklahoma taxable income and Oklahoma adjusted gross income.

 A. Taxable income and, where use of adjusted gross income is necessary, i. e., required by this act, adjusted gross income shall be adjusted as follows to arrive at Oklahoma taxable income and Oklahoma adjusted gross income:

 1. There shall be added interest income on obligations of any state or political subdivision thereto which is not otherwise exempted under other laws of this state, to the extent that said interest is not included in taxable income and adjusted gross income.

 2. There shall be deducted amounts included in such income amounts that the state is prohibited from taxing because of the provisions of the Federal Constitution, the State Constitution, federal laws or laws of Oklahoma.

 3. *Net income or loss from a business activity, which is not a part of business carried on within and without the state of a unitary character, shall be separately allocat-*

 *ed to the state in which such activity is conducted. Items of the following nature shall be allocated as indicated:*

 . . . . .

 d. the amount of any net operating loss deduction allowed to a taxpayer for federal income tax purposes shall be reduced to an amount which is the same portion thereof as the loss from sources within this state, as determined under this section and Section 2362 of this title, for the taxable year in which such loss is sustained is of the total loss for such year;" (emphasis added)

2. So poorly drawn is § 2358(A)(3) that if read literally it calls for the absurdity of allocating "to the state in which such activity is conducted" the net income (or loss) "from a business activity, *which is not* a part of business carried on within and without the state of a unitary character . . . ." (emphasis added) See footnote 1. One can say that the ambiguous provision is self-negating and pertains to no taxpayer, but such absurd results are to be constructionally avoided. *Brown v. State Election Board*, Okl., 369 P.2d 140 (1962).

establish an "Oklahoma net operating loss" it cannot take the deduction.

Taxpayer rips into the commission's theory by charging that the state agency conjured up the concept of an "Oklahoma net operating loss" as an expedient means of plugging a statutory loophole. In response the commission concedes it had to do a little inventing but justifies the contrivance as a means of avoiding the absurd result of an Oklahoma taxpayer being able to have an Oklahoma net profit and operating loss at the same time.

■ The problem has become complex, we think, because the state has attempted to becloud the primary issue with an untenable loophole plugging theory. As we analyze the relevant tax statutes of this state in force in 1975, they neither refer to nor require an "Oklahoma net operating loss" as a prerequisite to amending earlier returns to bring them in line with adjusted federal taxable income. And, although the result seems a bit absurd, the letter of the 1971 state tax laws allows Continental to do just what it did.

First of all, "taxable income" and "adjusted gross income" in Oklahoma are as defined in the federal code, and "Oklahoma taxable income" means taxable income reported to the federal government. Similarly, "Oklahoma adjusted gross income" means adjusted gross income reported to federal government as "adjusted further as hereinafter provided." 68 O.S.1971 § 2353 (12)(13).

The "hereinafter provided" adjustments referred to are set out in 68 O.S.1971 § 2358 and include a deduction for tax-exempt U.S. obligation interest income (§ 2358(A) (2)), the allocation adjustment (§ 2358(A)(3) (d))—which we determined earlier to be irrelevant to the issue involved here—and another provision of the statute that is relevant, namely § 2358(B)(4), which reads:

"In the case of savings and loan associations located in Oklahoma, there shall be added to taxable income the amount of any dividend or distribution of earnings to shareholders, members or certificate holders of such associations deducted in arriving at taxable income for such taxable year."

■ When the plain and unambiguous terms of §§ 2353(12) and (13), 2358(A)(2) and 2358(B)(4) are applied to the facts here, there can be no doubt that Continental's Oklahoma taxable income for 1975 (as adjusted in 1976) was $11,169,170. That figure is achieved by starting with what was reported to the federal government (a loss of $2,331,067) as required by § 2353(12) & (13), and adding dividends paid to depositors ($14,641,393) as required by § 2358(B)(4) and *Chickasha*, and then deducting tax-exempt interest received by Continental from U.S. obligations as authorized by § 2358(A)(2).

Had taxpayer stopped at this point there might have been no problem. But it did not. Through amended returns it carried back its 1975 federal loss so as to offset income reported to the I.R.S. in 1972 and 1973. Then having made these downward adjustments in its federal taxable income, it decided, pursuant to the implied requirements, of § 2353(12), to file amended state returns for 1972 and 1973 showing a taxable income conforming to the lesser amount reported in the amended federal returns. This of course, resulted in a reduced state income tax for the years 1972 and 1973. In doing this Continental complied with the letter of Oklahoma law which specifies that " 'Oklahoma taxable income' means 'taxable income' as reported . . . to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code."

The tax collectors, of course, denounce the anomalous result as being inequitable and stress the "unfairness" of allowing taxpayer to, in effect, benefit twice from a single loss. They insist we should hold that the legislature never intended to "give the [t]axpayer the same benefit twice" and asked us to construe the revenue code so as to prevent the "absurd result" advocated by Continental.

Of course, the answer to this suggestion is that there is no call for being concerned with legislative intent where, as here, the statutory language is clear, unambiguous, and without need of judicial interpretation. The courts may neither strike down "absurd" laws nor evade their force by means of interpretative revision merely because of the absurdity. We agree with the commission that it is likely the legislature did not intend the unusual result achieved by the taxpayer in this case mainly because such a result probably never occurred to that body. It is simply one of several potential and unforseen effects of the 1971 statutory effort to structurally tandem state income tax returns with the federal revenue reporting code. But, regardless of what was or was not intended by the lawmakers, the taxpayer has a perfect right to bring himself within the letter of the law unimpaired by judicial modification. The fact that the unexpected benefit inures to the taxpayers "unfairly" is not a legal ground for striking it down. Corrective action, if warranted, is a matter for the legislature and not the tax commission or the courts. Nor may the commission or the courts ignore the law merely because it may operate inequitably against the government.

We hold that when the federal government approved the adjustments of the 1972 and 1973 returns, the adjusted amount became Continental's Oklahoma taxable income, and since it was less than previously reported, the taxpayer was entitled to the refund requested for those two years.

The order of the Oklahoma Tax Commission is reversed and the cause is remanded with directions to allow the claims for refund filed by Continental.

BACON, P. J., and NEPTUNE, J., concur.