**UTICA BANKSHARES CORPORATION,**
Appellant,

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

No. 75480.

Supreme Court of Oklahoma.

May 17, 1994.

As Modified on Grant of Rehearing
Jan. 24, 1995.

Rehearing Denied April 13, 1995.

John B. Turner and Susan Stidham Brandon, Doerner, Stuart, Sanders, Daniel & Anderson, Tulsa, for appellant.

Joe Mark Elkouri, Gen. Counsel and J.L. Miller, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

ALMA WILSON, Justice.

The dispositive issue is whether the Oklahoma Income Tax Act, §§ 2352, et seq., of Title 68 authorizes a deduction based on federal net operating loss over and above the federal net operating loss deduction allowed by the Internal Revenue Service for the corresponding tax year. We also decide whether 68 O.S.1981, § 2358(A)(3)(a) operates to allocate an Oklahoma carryback deduction where Oklahoma net operating loss is less than federal net operating loss and all federal losses are from Oklahoma sources. We also conclude that purely intra-state net operating loss deductions are not allocable under 68 O.S.1981, § 2358(A)(3)(a). We conclude that the Oklahoma Income Tax Act does not explicitly authorize a deduction based on a federal net operating loss, but that deductions based on federal net operating loss are integrated into the state tax structure through the definitions of "Oklahoma adjusted gross income" and "Oklahoma taxable income" in § 2353 of Title 68. We hold that appellant is

not entitled to the claimed deductions based on federal net operating loss over and above the federal net operating loss deductions allowed by the Internal Revenue Service for the corresponding tax years. We also hold appellant is entitled to the full amounts used as carryback deductions on its federal return(s), or a total deduction of $2,704,337.00.

Appellant, Utica Bankshares Corporation, is the bank holding company for Utica National Bank & Trust Company (Utica Bank) located in Tulsa, Oklahoma. Appellant has three wholly-owned subsidiaries: Utica Bank, Utica Investment Corporation and Utica Capital Corporation. Appellant filed consolidated federal returns for the years from 1972 through 1983. Appellant's consolidated 1982 and 1983 federal tax returns reflected serious losses for Utica Bank. Federal law allows Utica Bank to reduce its taxable income reported for previous and/or subsequent tax years through deductions for its federal net operating losses (NOL).[1] The Internal Revenue Service (IRS) allowed Utica Bank to carry back portions of its 1982 NOL to the years 1972 through 1980.[2] Utica

1. Federal net operating loss and the NOL deduction are creatures of Section 172 of Title 26 of the Internal Revenue Code. Section 172(a) creates the NOL deduction. Section 172(b)(1)(D) allows banks to utilize the NOL deduction over a period of 15 years, 10 years preceding the loss year and 5 years following the loss year. Section 172(b)(2) requires that the entire loss shall be carried to the earliest year and any excess of the

loss over the taxable income of the earliest year shall be carried to the next year and so forth. And, section 172(c) defines a net operating loss as the excess of the deductions allowed over the gross income.

2. Appellant filed amended federal returns for the years 1972 through 1980, electing to carry back portions of Utica Bank's 1982 loss, as follows:

| Tax Year | Federal taxable income reported originally | NOL allowed to be carried back to reduce federal taxable income | Federal taxable income finally ascertained |
|---|---|---|---|
| 1972 | $ 272,773 | $ 272,773 | $0 |
| 1973 | 284,265 | 284,265 | 0 |
| 1974 | 801,543 | 801,543 | 0 |
| 1975 | 145,885 | 145,885 | 0 |
| 1976 | 187,072 | 187,072 | 0 |
| 1977 | 568,834 | 568,834 | 0 |
| 1978 | 53,747 | 53,747 | 0 |
| 1979 | 208,172 | 208,172 | 0 |
| 1980 | 182,046 | 182,046 | 0 |
| TOTALS | $2,704,337 | $2,704,337 | 0 |

Bank's federal taxable income for each year is zero, as finally ascertained by the IRS.[3]

However, Utica Bank's Oklahoma taxable income for each of the involved tax years was not zero because during those years Utica Bank had income which was excluded from federal taxable income, such as income earned on obligations of municipalities in other states. In accordance with § 2358 of Title 68, this income, totalling $8,120,684 for the involved years, was added to the finally ascertained federal taxable income of zero to arrive at Oklahoma taxable income.[4] In order to wipe out its earnings of $8,120,684 for state tax purposes, Utica Bank claimed additional federal NOL deductions.[5]

The Income Tax Division of the OTC did not allow the full amount of the carryback deductions claimed for tax years 1972 through 1980. Appellant protested the disallowance of the Income Tax Division and requested a hearing before the OTC pursuant to 68 O.S.1981, § 207. Upon hearing the protest and receiving stipulated facts, the Administrative Law Judge of the OTC submitted findings of fact and conclusions of law to the OTC, recommending that the protest be denied. By Order No. 90–03–30–004, the OTC adopted the Findings, Conclusions and Recommendations of the Administrative Law Judge and declared the order to be precedential in nature. Finding that the order of the OTC adequately explains the decision and that it is free from reversible error of law, the Court of Appeals affirmed. We previously granted certiorari.

■ On certiorari, Utica Bank asserts that the entire 1982 and 1983 loss was generated by activities conducted within Oklahoma and, hence, it may carryback so much of the entire federal NOL as is needed to reduce its Oklahoma taxable income to zero. That is, Utica Bank asserts that the federal NOL deductions for intra-state income are not limited to the amounts of the federal tax deductions for the corresponding tax years by Section 2358(A)(3)(a).[6] Utica Bank argues that

3. Title 26 U.S.C. § 172(b)(2), captioned **Amount of carrybacks and carryovers.**, expressly provides that "... the taxable income for any such prior year ... so computed shall not be considered to be less than zero."

4. Our income tax statutes "piggy-back" the calculation of state taxable income upon the calculation of federal taxable income. The statutory definitions in § 2353 of Title 68 specifically provide that "Oklahoma taxable income" and "Oklahoma adjusted gross income" shall be those amounts finally ascertained under the Internal Revenue Code and further adjusted under state tax law. *Dugger v. Oklahoma Tax Commission*, 834 P.2d 964 (Okla.1992) and *Income Tax Protest of Flint Resources v. Oklahoma Tax Commission*, 780 P.2d 665 (Okla.1989).

5. Appellant filed amended state returns for the years 1972 through 1980, claiming additional federal NOL deductions, over and above the $2,704,337 allowed by IRS to wipe out its original federal taxable income, in order to reduce its "Oklahoma taxable income" to zero, as follows:

| Tax Year | NOL claimed to reduce state taxable income | Amount of NOL deduction claimed for state but not for federal tax purposes |
|---|---|---|
| 1972 | $ 295,535 | $ 22,762 |
| 1973 | 494,835 | 210,570 |
| 1974 | 1,317,742 | 516,199 |
| 1975 | 842,049 | 696,164 |
| 1976 | 947,625 | 760,553 |
| 1977 | 1,357,706 | 788,872 |
| 1978 | 1,389,126 | 1,335,379 |
| 1979 | 2,005,624 | 1,797,452 |
| 1980 | 2,174,779 | 1,992,733 |
| TOTAL | $10,825,021 | $8,120,684 |

6. The applicable provisions of 68 O.S.1981, § 2358(A)(3)(a) provided:

the OTC's denial of the claimed deduction, and the Court of Appeals affirmance, are inconsistent with *Postal Finance Co. v. Oklahoma Tax Commission*, 594 P.2d 1205 (Okla. 1979), *Getty Oil Co. v. Oklahoma Tax Commission*, 563 P.2d 627 (Okla.1977), and *Continental Federal Savings & Loan Association v. Oklahoma Tax Commission*, 601 P.2d 743 (Okla.App.Ct.1979).

In *Getty Oil* a refund of state income taxes was sought through a carryover deduction claimed on its 1971 state tax return for net operating losses from activities in Oklahoma during the prior five years. There were no federal net operating losses for these five years because the Oklahoma losses were off-set and absorbed at the federal level by profits from activities in other states. Consequently, Getty Oil did not claim a loss deduction on its 1971 federal return. The *Getty Oil* opinion first recognizes that Oklahoma did not allow a deduction for net operating loss until 1971, when the "piggy-back" state/federal income tax code was enacted. Then reviewing the definitions of Oklahoma adjusted gross income and Oklahoma taxable income in 68 O.S.1971, § 2353, which are grounded in federal adjusted gross income and federal taxable income, and the adjustments to arrive at Oklahoma adjusted gross income and Oklahoma taxable income in 68 O.S.1971, § 2358, the *Getty Oil* opinion concludes that § 2358 does not create a deduction based on net operating loss, it only limits a loss used as a deduction on the federal return.[7]

In *Postal Finance*, a refund of state income taxes was sought through loss carry-backs on the state returns where none was claimed on the federal return for the same years. In affirming the OTC's denial of the claimed deductions, as it had done in *Getty*

*Oil*, this Court said: "*Getty Oil Co.*, supra, recognized a loss carryover, or as here, a loss carryback, comes only through the definition of 'Oklahoma taxable income(.)'" ... and as "(w)e said in *Getty*, 'If the Legislature had intended to allow a carryover [carryback] deduction in other situations, it could have provided for such an adjustment. It did not do so.'"[8]

In *Continental Federal S & L*, the OTC refused to recognize Continental's attempt to double-dip the 1975 federal loss by using it to reduce its 1975 Oklahoma taxable income and also using it as a carryback deduction to reduce its 1972 and 1973 Oklahoma taxable income. The substantive issue in *Continental Federal S & L* was whether the state income tax statutes permitted the taxpayer to utilize its 1975 federal net operating loss more than one time. Consistent with our opinions in *Getty Oil* and *Postal Finance*, *Continental Federal S & L* concluded that federal taxable income, which is purely intrastate income, is not allocable under § 2358(A)(3)(d), now § 2358(A)(3)(a); and, that a prior year Oklahoma taxable income may be adjusted downward if the IRS approves adjustment to that prior year federal taxable income based upon a net operating loss carryback.

■ Neither of our opinions in *Getty Oil* and *Postal Finance*, nor the Court of Appeals opinion in *Continental Federal S & L*, support the additional deductions claimed by Utica Bank which are over and above the amount of carryback deductions used by Utica at the federal level for the corresponding tax years (i.e. 1972–80). However, as argued by Utica Bank and earlier recognized in *Getty Oil* and *Postal Finance*, § 2358(A)(3)(a) does not limit the amount of a federal NOL deduction which Utica Bank may claim for

A. Taxable income and, where use of adjusted gross income is necessary, i.e. required by this act, adjusted gross income shall be adjusted as follows to arrive at Oklahoma taxable income and Oklahoma adjusted gross income:

3. The amount of **any federal net operating loss deduction** shall be adjusted as follows:

a. For carryovers and carrybacks to taxable years before January 1, 1981, **the amount of any net operating loss deduction allowed to a taxpayer for federal income tax purposes** shall

be reduced to an amount which is the same portion thereof as the loss from sources within this state, as determined under this section and Section 2362 of this title, for the taxable year in which such loss is sustained is of the total loss for such year; [Emphasis added.]

7. *Getty Oil Co. v. Oklahoma Tax Commission*, 563 P.2d at 630.

8. *Postal Finance Co. v. Oklahoma Tax Commission*, 594 P.2d at 1207.

state tax purposes, where Utica Bank is an intrastate entity. Instead, § 2358(A)(3)(a) limits the amount of a federal NOL deduction claimed by interstate entities. Utica Bank, as an intrastate entity, is entitled to claim the full amount of its federal NOL deduction allowed for federal tax purposes.

■ Our opinions in *Getty Oil* and *Postal Finance* make it clear that tax deductions are a matter of legislative grace[9] and § 2358(A)(3)(a) does not create a federal NOL deduction.[10]

Utica Bank does not cite a state statute which authorizes an Oklahoma carryback deduction in excess of the federal NOL deduction utilized by a taxpayer and no deduction may be allowed in the absence of statutory authority. We therefore affirm that portion of OTC Order No. 90–03–30–004, which denies Utica Bank's claimed net operation loss deductions in excess of the amount of federal net operation loss deductions used at the federal level for the corresponding tax years to bring its federal taxable income to zero.[11]

Under the stipulated facts in this appeal, Utica is entitled to the full amounts deducted on its federal returns or a total deduction of $2,704,337.00. The OTC has refused to allow Utica the full amounts of the federal NOL deductions which the IRS allowed in finally ascertaining Utica's federal taxable income for tax years 1972 through 1980. The OTC erroneously applied § 2358(A)(3)(a) to reduce Utica's Oklahoma carryback deduction from $2,704,337.00 to $281,246.00. We therefore reverse that part of OTC Order No. 90–03–30–004 which reduced Utica's Oklahoma carryback deduction below the amount of federal NOL deductions. We remand this case to the Oklahoma Tax Commission with directions that the Commission grant appellant, Utica Bankshares Corporation, an income tax refund for tax years 1972 through 1980 based on a net operating loss carryback deduction of $2,704,337.00. Any precedential value of Order No. 90–03–30–004 is superceded by this opinion.

**CERTIORARI PREVIOUSLY GRANTED; MEMORANDUM OPINION OF THE COURT OF APPEALS VACATED;**

9. The OTC argues that § 2358(A)(3)(a) operates to reduce a federal NOL deduction for Oklahoma tax purposes where there is a difference between federal NOL and Oklahoma loss for the respective tax year. Based on this interpretation, the OTC reduced Utica's utilized federal NOL deduction from $2,704,337.00 to $281,246.00. This result was achieved by multiplying Utica's federal NOL deduction by 10.4%. This figure represents the ratio of Utica's Oklahoma loss to its total federal NOL for 1982. The OTC contends that this reduction is authorized by § 2358(A)(3)(a), which requires that a federal NOL deduction be reduced, for Oklahoma tax purposes, to an amount that is the same percentage as losses from Oklahoma sources are to the federal NOL for the tax year. We disagree.

The function of § 2358(A)(3)(a) is to limit the amount of carryback losses at the State level to that portion of federal NOL that is attributable to activities carried on in Oklahoma. *See Getty Oil Co. v. Oklahoma Tax Commission*, 563 P.2d 627, 630 (Okla.1977). In *Getty Oil*, this Court recognized that the allocation authorized by § 2358(A)(3)(a) is directed to situations where a federal NOL deduction includes losses from business activities conducted in other states. *Id.*

All of Utica's federal losses were derived from Oklahoma activities or sources. The difference in Utica's federal NOL and its Oklahoma loss for 1982 was attributable to differences in taxable income at the state and federal levels. Utica's Oklahoma taxable income included interest on

government obligations, amounts that were excluded from computation as federal taxable income. Section 2358(A)(3)(a) contains no language which suggests a reduction of federal NOL deductions where Oklahoma loss is less than federal NOL due to differences in federal and state taxable income. The OTC's interpretation of § 2358(A)(3)(a), as applied to Utica, is inconsistent with the language of the statute and with the prior decisions of this Court.

10. *Income Tax Protest of Flint Resources*, 780 P.2d 665, 673 (Okla.1989); *Essley v. Oklahoma Tax Commission*, 196 Okla. 473, 168 P.2d 111 (1946); *Home–Stake Royalty Corp. v. Weems*, 175 Okla. 340, 52 P.2d 806 (1936).

11. Although the Legislature has amended § 2358 of Title 68 many times since the 1971 enactment, the language requiring reduction of a federal NOL deduction to that proportion of income earned in Oklahoma remains substantially unchanged in the 1981 and 1991 codifications. See note 6 for the applicable statutory text. Accordingly, our legal conclusions in *Getty Oil*—that § 2358 does not create a state tax deduction based on net operating losses derived from activities in Oklahoma, but that it does limit the net operating loss deduction reported on the federal return to the loss derived from Oklahoma activities—are applicable to the text of § 2358(A)(3)(a), as recodified.

OKLAHOMA TAX COMMISSION OR-
DER NO. 90–03–30–004 AFFIRMED IN
PART; REVERSED IN PART AND RE-
MANDED WITH DIRECTIONS.

HODGES, C.J., LAVENDER, V.C.J., and
SIMMS, HARGRAVE, OPALA and
SUMMERS, JJ., concur.

KAUGER and WATT, JJ., concur in
result.

SUMMERS, Justice, concurring:

I concur with the opinion because under
Oklahoma's piggy-back system the state de-
duction "allowed" is based upon the federal
deduction that was "allowed" by the I.R.S.
for use on the return. The state deduction is
not based upon a deduction theoretically
available under federal law but which was
not actually used on the federal return.