**HUMANA HOSPITAL CORPORATION, INC., d/b/a Yukon Community Hospital, Appellee,**

v.

**The OKLAHOMA HEALTH PLANNING COMMISSION, a state agency, Appellant.**

No. 59329.

Supreme Court of Oklahoma.

May 28, 1985.

Rehearing Denied Sept. 18, 1985.

Cate & Martin by Lee Cate, Norman, for appellee Humana Hosp. Corp., Inc.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellant Oklahoma Health Planning Com'n.

Derryberry, Duncan, Gray & Quigley by Larry Derryberry, Oklahoma City, for appellant/intervenor Deaconess Hosp.

Crowe & Dunlevy by Richard C. Ford and Monty B. Bottom, Oklahoma City, for appellant/intervenor Bethany Gen. Hosp.

McKinney, Stringer & Webster by Kenneth R. Webster and Jim T. Priest, Oklahoma City, for amicus curiae I.H.P. Corp.

Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks by Gene Stipe and Robert K. McCune, Oklahoma City, for amicus curiae Lifemark Corp., Inc.

LAVENDER, Justice:

Under Oklahoma statutes the Oklahoma Health Planning Commission (OHPC) has the duty of assuring the orderly development of health services within the state and the responsibility for operating and implementing a state program of health planning and of administering all health

planning functions.[1] It is the declared public policy of the state that the development of institutional health care services should occur in a planned, orderly and economical manner, and to this end such development may only take place under a certificate of need issued by the OHPC.[2]

Appellee Humana Hospital Corporation, Inc., sought such a certificate of need to build a proposed 125 bed hospital in Yukon, Oklahoma, which would serve the residents of eastern Canadian County. Humana backed its application with letters and petitions signed by residents of Yukon and the surrounding area in support of its proposal. Humana also used the results of a survey which it had conducted to bolster its contention that the proposed hospital was needed.

As part of the application procedure other hospitals within the trade area[3] affected were notified of Humana's proposal. Several hospitals in western Oklahoma County made known their opposition to Humana's proposal. In their statements made in response to the application, these hospitals argued that the proposed hospital would draw patients away from them and cause an increase in unoccupied beds. This increase in unoccupied beds would in turn result in an increase in the cost of health care to those using the hospitals.

Humana's application was initially reviewed by the Oklahoma Health Systems Agency, which found that: 1) the need for the proposed facility had not been documented and justified; and 2) all alternatives to the proposed project had not been thoroughly considered. The Health Systems Agency recommended disapproval of the application to OHPC. The report to the OHPC contained the following statement concerning the need for the proposed hospital:

> In the area directly affected by this proposed project, Canadian and Oklahoma counties, there are on an average 1,604 vacant beds and it appears these vacant beds are accessible to Canadian County residents in that basic hospital services are within 30 minutes one-way driving time and complex hospital services are within 60 minutes one-way driving time. Therefore, it appears that additional acute care general hospital beds are not needed in the area affected by this application, i.e., Canadian and Oklahoma counties.

The OHPC's own staff investigation report concerning Humana's application also came to the conclusion that there was not a need for the proposed new hospital. This report included the following analysis:[4]

### NEED CRITERIA

A. *(Criterion 1)*

The relationship of the proposal to the Health Systems Plan, Annual Implementation Plan and the State Health Plan.

1. The Health Systems Plan adopted by the Oklahoma HSA in January 1981, in Chapter 7, Page 230, Item 7, states that in 1985 there will be an excess of 839 to 900 beds in the service area.

2. The 1980 State Health Plan places Canadian County in Trade Area 1, together with Blaine, Logan and Oklahoma County. Oklahoma City is designated for specialized hospital services and is one of two sites in the State for highly specialized services.

The Plan contains the following goals and objectives for general inpatient care:

---

1. *Tulsa Area Hospital Council, Inc., v. Oral Roberts Univ.*, 626 P.2d 316, 318 (Okla.1981); 63 O.S.1981 § 2653 and 63 O.S.1981 §§ 1–112 and 1–113.

2. 63 O.S.1981 § 2651.

3. Under the state health plan adopted by the OHPC the state is divided into regions referred to as trade zones. The trade zone including Yukon includes Oklahoma, Canadian, Blaine and Logan Counties.

4. 63 O.S.1981 §§ 2652.1 and 2653 provide for the investigation and review of a completed application. The primary determination to be made in this review procedure is whether there is a need for the proposed facility.

(a) *Inpatient Hospital Capacity:* Sufficient capacity to meet the public's requirements for care without duplicative or excessive facilities, services or beds.

(i) *p. 478* By 1985 an acute care hospital bed supply approximating 4.0 beds per 1,000 general population with appropriate adjustments.

* In April 1981, adjustments in consideration of the high proportion of elderly in the population and sparse population density amended this objective to 4.92 beds per 1,000 population and 62% overall occupancy.

(ii) *p. 486* Through 1980, a general hospital use rate between 1100 and 1200 patient days per 1000 general population.

(iii) *p. 489* Through 1985, maintaining access to hospital care within 30 minutes driving time for 98% of Oklahoma's population.

Staff Comment:

This proposal appears to be contrary to the Goal and two of the objectives in the State Health Plan.

1. Records of the State Health Department's Facilities Licensure Service indicate that there are 15,471 licensed acute care beds in Oklahoma's 128 acute care non-federal hospitals. Adjusted for those under construction, the adjusted number of beds presently in place is 14,955 or 4.96 beds per 1,000 general population. Of this number *4420* are in Oklahoma Trade Area # 1. Another 690 beds are under construction or otherwise authorized under Certificate of Need/Section 1122. When these are added, the bed to population ratio in Trade Area # 1 is *6.64 per 1,000* population.

When the beds now under construction or authorized under CN/1122 are included, the ratio calculates to 7.68 beds/1000 population. Population in-

creases since 1980 in Trade Area # 1 will tend to change this ratio.

2. Based upon the above, there is enough existing and in construction hospital bed capacity in Trade area # 1 to yield 1,865,150 patient days of care. In FY 1980, 1,010,027 patient days of care were provided. There is enough bed capacity in Trade Area # 1 to accommodate population *increases* of 359,400 people assuming an annual use rate of 1,200 patient days per 1000 population and an average utilization of 80% of the beds.

3. The SHCC and Commission justifications for the 4.92 beds/1000 exception to the 4.00 bed/1000 standard:

(1) More elderly in the population.
(2) Sparse populations in remote areas.
The Trade Area and Yukon do not have these two characteristics.

The OHPC considered the results of the staff investigation and other evidence in relation to Humana's application and entered an order denying the requested certificate of need. As part of this order the OHPC included requested findings of fact and conclusions of law. For the purpose of this opinion, we need only consider Finding of Fact # 6 and Conclusion of Law # 1.

Finding of Fact # 6 states:

[the] Oklahoma State Health Plan does not indicate a need for additional hospital beds as amplified on pages 4 and 5 of the Commission Staff Investigation which is hereby made part of this Order;

Conclusion of Law # 1 states:

The action proposed is neither necessary nor desirable in order to appropriately provide necessary institutional services in the region or district (trade area) to be served;

Humana subsequently appealed the decision of the OHPC to the District Court of Canadian County.[5] Bethany General Hos-

5. The provision governing appeals from an OHPC ruling on an application for certificate of need is 63 O.S.1981 § 2653.1, which provides:
    Any party aggrieved by a decision of the Oklahoma Health Planning Commission on

an application for a certificate of need under this act shall be entitled to appeal the determination of the Commission under the Administrative Procedures Act. The final decision of the Commission shall be upheld by the court

pital and Deaconess Hospital intervened in this action as affected parties. The trial court, after review of the record before the OHPC, reversed the OHPC ruling on the ground that the decision had been arbitrary and capricious. The trial court specifically found that the certificate of need would contribute to the orderly development of health services and that the proposal was consistent with the state health plan.

The decision of the trial court was, in turn, appealed to this Court, which assigned the case to the Court of Appeals, Division 2. The Court of Appeals upheld the trial court's ruling, finding that a need had been shown for a hospital in Canadian County, and that the OHPC decision had been against the weight of the evidence.[6] The OHPC and intervenor hospitals petitioned for writ of certiorari for the review of this decision. We have previously granted certiorari and now turn the merits of the question.

In *Tulsa Area Hospital Council v. Oral Roberts University,* we set the standard of review to be applied to an OHPC decision regarding a certificate of need, stating:[7]

> Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when the administrative agency is reviewed by the judiciary. A court of review may not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises. The rationale for this rule is that courts do not possess the specialized knowledge, training, experience or competency to substitute opinions for the judgment of qualified experts. The legislature has recognized that the expertise in some cases of legislative authority is better left to those who have refined abilities in narrow areas, controlled only by general guidelines established by the legislature.

If the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free of error, the decision of the agency must be affirmed. (Footnotes omitted)

The basis for the OHPC determination that Humana's proposed hospital was not needed was that there already existed a number of beds in the area more than adequate to serve the population. And, these beds were available within 30 minutes driving time of the area to be served by Humana's proposed hospital.

The basis for the OHPC's concern regarding the control of the number of beds in an area becomes apparent upon the examination of the arguments of the other hospitals in regard to Humana's application. An increase in the number of beds per population means a lower percentage of occupancy for those beds and all existing beds. A lower percentage of occupancy in turn means that those who do occupy the beds will be forced to pay a higher percentage of the hospital's fixed costs, which translates to higher medical costs for everyone in the affected area.

The courts below considered this point only as having an effect upon the other hospitals as competitors, rather than addressing its impact upon the population as a whole. The OHPC, on the other hand, is charged with overseeing the development of institutional health care as it affects the entire population. No evidence was presented below, and no argument has now been presented, to indicate that the factors utilized by the OHPC in arriving at a plan to provide readily available, yet relatively low cost, health care to the population as a whole do not bear a relation to that goal. Therefore, in keeping with the deference due the agency's decisions, we must accept that a bed to population ratio of 4.0 to 4.92 beds per 1000 population in which acute care facilities are within 30 minutes driving

---

unless it is arbitrary or capricious or was not in accordance with applicable law.

**6.** The Court of Appeals acted improperly in weighing the evidence. In proceedings under the Administrative Procedures Act, the review-

ing court is clearly not to engage in substituting its judgment as to the weight of the evidence for that of the agency. 75 O.S.1981 § 322(1)(e).

**7.** 626 P.2d at 320.

time of 90 percent of the population provides health care which is both adequate and optimally low cost.

As the OHPC's decision to deny Humana's application was based upon a finding of a lack of need, and that lack of need was established upon factors designed to insure that health care is kept both adequately available and at the lowest possible cost, this decision was neither arbitrary nor capricious [8] and was in accord with applicable laws and should have been affirmed. Accordingly, the opinion of the Court of Appeals is vacated, the judgment of the trial court is reversed and the decision of the OHPC is affirmed.

DOOLIN, V.C.J., and HARGRAVE, OPALA and SUMMERS, JJ., concur.

SIMMS, C.J. and ALMA WILSON, J., dissent.

HODGES, J., not participating.

KAUGER, J., disqualified.

---

**8.** See *United States v. Carmack,* 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946).