OKLAHOMA PARK, INC., Appellee,

v.

OKLAHOMA HORSE RACING COMMISSION, Appellant.

No. 64734.

Supreme Court of Oklahoma.

March 25, 1986.

---

**21.** 193 Okl. 1, 140 P.2d 740 (1943).

Michael C. Turpen, Atty. Gen., Neal Leader, Asst. Atty. Gen., Oklahoma City, for appellant.

Kenneth L. Delashaw, Jr., Robert M. Highsmith, Milor, Eakin, Burns & Delashaw, Inc., Marietta, for appellee.

Mary Joe Smith, Little, Little, Little, Windel & Smith, Tishomingo, amicus curiae Southern Oklahoma Horsemens' Assoc.

SIMMS, Chief Justice.

Appellee, Oklahoma Park, Inc., applied to the Oklahoma Horse Racing Commission for an organization license. After a full hearing, at which considerable testimony and evidence were received, the Commission denied the application because Oklahoma Park failed to demonstrate that its plan for financing and operating the proposed facility had sufficient financial integrity.

Oklahoma Park appealed to the District Court of Love County. That court reversed the Commission's order, and remanded the matter to the Commission with directions to grant Oklahoma Park an organization license on the condition that within 60 days the applicant demonstrate, to the court's satisfaction, that it had received funding.

The Commission appealed and also sought a stay of the district court's order pending determination of the merits of the appeal. After hearing on the matter, this Court issued an order staying the judgment of the trial court pending appeal.

Appellant Commission contends that the trial court erred in reversing the Commission as its action denying the license had been supported by substantial evidence and relevant laws had been correctly applied. Appellant submits the trial court arbitrarily substituted its judgment for that of the Commission, rather than reviewing the administrative action under the proper standard of review which would have required affirmance.

Appellant argues that its case met the substantial evidence test of 75 O.S. 1981 § 322, and our decisions interpreting it, such as *Tulsa Area Hospital Council, Inc. v. Oral Roberts University*, Okl., 626 P.2d 316 (1981).

Appellant next contends that the district court compounded its error by ordering the Commission to grant the appellee a 60 day conditional license. The Commission argues that even if it had committed reversible error, the trial court's remedy was improper under 3A O.S.1981 § 322(1)(e) as demonstrated by this Court's recent decision in *Humana Hospital Corporation v. The Oklahoma Health Planning Commission*, Okl., 705 P.2d 175 (1985).

For the reasons set out below, we hold that the District Court did err in reversing the order of the Commission. We reverse the trial court, vacate its order and affirm the action of the Commission. We therefore need not address questions as to the propriety of the trial court's remand with directions to grant a conditional license.

The Commission is charged by clear statutory mandate to design, create and maintain a racing program which is free of even a suggestion of corruption or dishonesty. Title 3A O.S.Supp.1984 § 203.7, provides:

In the interest of the public health, safety, and welfare, it is hereby declared to be the *purpose and intent of the Oklahoma Horse Racing Act to vest in the Commission plenary power to promulgate rules and regulations for the forceful control of race meetings* held in this state. *The rules and regulations shall:*

1. encourage agriculture and the breeding of horses in this state; and

2. maintain race meetings held in this state of the *highest quality and free of any horse racing practices which are*

*corrupt, incompetent, dishonest, or unprincipled;* and

   3. *dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of horse racing in this state;* and

   4. generate public revenues. (Emphasis supplied.)

In order to carry out its responsibility to fully and carefully consider applications for an organization license, the Commission is empowered to exercise discretion in weighing the decision to grant or deny a license.

Title 3A O.S.Supp.1984 § 205.2(B) provides: "The Commission may exercise discretion in the issuing of organization licenses to qualified applicants...." That statute further requires the following:

   "... When granting organization licenses and allocating dates for *race meetings which will, in the judgment of the Commission,* be conducive to the best interests of the public and the sport of horse racing, the Commission shall give consideration to:

   1. the *character, reputation, experience, and financial integrity of each applicant and of any other person* that:

   a. directly or indirectly controls such applicant, or

   b. is directly or indirectly controlled by such applicant or by a person who directly or indirectly controls such applicant; and

   2. *the facilities and accommodations of the applicant* for the conduct of race meetings; and

   3. the location of the race meeting of the applicant in relation to the principal centers of population of this state; and

   4. the highest prospective total revenue to be derived by the state from the conduct of the race meeting." (Emphasis supplied.)

The Commission contends that its finding that the appellee's proposed financial package lacked the requisite integrity was clearly supported by substantial evidence. We agree.

Among the most relevant and significant facts shown by the record are these. Applicant, Oklahoma Park, Inc., was a newly formed Oklahoma corporation with a total paid-in capital of $1,001.00. The officers of the corporation are John F. Wolcott, Sr., of Shreveport, Louisiana and Laurence W. Ritter and Gladys Ritter, both of Los Angeles, California. The proposal involved 120 percent financing. A $46,000,000 track was to be financed by a $57,000,000 loan which was to be obtained through the efforts of an employee of a foreign company located in England, Arab International Trust Company, Ltd. This company would receive the actual funds from another foreign company incorporated in the Cayman Islands. The individual investors could not be identified and the actual cash would come from secret, numbered bank accounts. The documents presented to the Commission did not constitute a binding loan agreement. The loan package was put together in major part by a convicted felon, whom the unrefuted record shows to be a nationally known organized crime figure. This organized crime figure had extensive contacts with the applicant and it was he who brought all the parties together. In addition to having unknown lenders, the only identified insurer of the project was represented by the felon.

We agree with the Commission's assessment of the evidence before it as amply supporting the finding that applicant failed to demonstrate the financial integrity of its financing plan.

■ Appellee contends to this Court that the Commission was powerless to consider the integrity of the financing plan; that it is limited by 3A O.S.Supp. § 205.2(C) to considering the financial integrity of only the individual applicants and those who may exercise control over them or be controlled by them.

The relevant portion of the statute requires the Commission to consider:

   1. the character, reputation, experience, and financial integrity of each applicant and of any other person, that:

a. directly or indirectly controls such applicant, or

b. is directly or indirectly controlled by such applicant or by a person who directly or indirectly controls such applicant; . . . .

Appellee argues that it would be an unreasonable and untenable construction of the statute to allow the Commission to consider the "financial integrity" of both the financial package, and people, who are in appellee's view, remote and unrelated to the proposal. Appellee argues that the license could not properly be denied because the financial integrity of the applicant corporation and its officers was beyond reproach, and there was no evidence that those involved with the financial arrangements could exercise control.

We summarily reject this argument. The Commission was absolutely correct in its application of the statute to the proposed financial package. It is not possible to separate considerations of those who propose a plan from the plan they propose. Applicant here was an "applicant" under the statute by reason of the plan it submitted for approval, and that plan necessarily included all the financial arrangements which would implement it.

It is absurd to suggest that the source of funding or any other financial arrangements proposed to build and maintain a race track should be ignored by the Commission.

This case is a perfect example of the impossibility of severing the integrity of applicants from the plans they present. Here applicant and its officers had assets of $1,001.00. Their proposal called for borrowing $57,000,000 from unknown sources to finance the project. The integrity of the applicants in the abstract becomes irrelevant. When the financing arrangements lack integrity, the applicant lacks financial integrity.

If it had not considered the integrity of this financial package, the Commission would have been derelict in its duty imposed by 3A O.S.Supp.1984 § 203.7 to "dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of horse racing in this state."

The Commission's decision to deny Oklahoma Park an organization license is supported by substantial evidence and is in accord with applicable law. The trial court erred in reversing it. The trial court is thereby REVERSED and the decision, of the Commission is AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, HARGRAVE, OPALA and SUMMERS, JJ., concur.

WILSON, J., dissents.

HODGES, J., not participating.

KRAUGER, J., disqualified.