834 P.2d 964 (1992)
Athel W. DUGGER and Anna Dugger, Husband and Wife, Appellants,
v.
The STATE of Oklahoma, ex rel. OKLAHOMA TAX COMMISSION, Appellee.
No. 74586.
Supreme Court of Oklahoma.
July 14, 1992.
Richard Phillips, Graft & Cabaniss, Clinton, for appellants.
David Hudson, Gen. Counsel, David Allen Miley, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.
*965 ALMA WILSON, Justice:
The dispositive issue in this appeal is whether there is substantial evidence to support the findings and conclusions of the Oklahoma Tax Commission. We hold that the evidence is insufficient to support the finding by the Oklahoma Tax Commission that the federal adjusted incomes for tax years 1984, 1985 and 1986 were not recomputed in determining the tax reduction claimed for the 1987 tax year.
During 1984, 1985 and 1986, Athel W. Dugger received $426,567.00 from the sale of gas produced in this state. For tax years 1984, 1985 and 1986, Athel W. and Anna Dugger, appellants (taxpayers), reported the mineral interest proceeds for income tax purposes. Mobil Oil Corporation, an interest owner in the gas well, sued Dugger in federal district court to recover the gas proceeds paid to Dugger, on the grounds that the Dugger took a greater portion of the gas than he was entitled to receive. Pursuant to a settlement agreement, Dugger agreed that, as of December 31, 1986, he had received production proceeds in the amount of $426,567.00 and that he should pay $365,204.29 of the production receipts to Mobil Oil Corporation for distribution to the other interests owners. In 1987, Dugger paid to Mobil the judicially approved amount of overpayment. Dugger reported this repayment of $365,204.29 to the Internal Revenue Service in his 1987 personal income tax return, filed jointly with his spouse. In 1988, taxpayers filed amended state income tax reports for tax years 1984, 1985 and 1986 and claimed refunds for each year based upon the 1987 repayment to Mobil.
The Income Tax Division of the Oklahoma Tax Commission denied the refunds claimed on the amended state reports for the specified reason that the taxpayers failed to file amended federal returns for the involved tax years. Taxpayers protested the denial of refunds pursuant to 68 O.S. 1981, § 207 and 68 O.S.Supp. 1988, § 2373. On January 29, 1989, an adjudicatory proceeding was had before a hearing officer of the Oklahoma Tax Commission. On September 28, 1989, the hearing officer submitted written findings and conclusions to the Oklahoma Tax Commission and recommended that the taxpayer protest and claim for refund be denied. On November 14, 1989, the Oklahoma Tax Commission, appellee (OTC), issued Order No. 89-11-14-011, denying taxpayers' request for a hearing *966 before the OTC en banc and adopting the Findings, Conclusions, and Recommendations of the hearing officer. The Court of Appeals reversed Order No. 89-11-14-011 and remanded the cause with directions to the OTC to refund the state income tax paid on the mineral proceeds which taxpayers repaid in 1987. Certiorari was previously granted to determine whether the findings and conclusions entered by the Oklahoma Tax Commission in Order No. 89-11-14-011 are supported by substantial evidence.
The issue presented to the OTC was whether taxpayers' federal "claim of right" constituted an adjustment by the federal government to the taxpayers' adjusted gross income for the involved tax years.[1] Our income tax statutes "piggy-back" the calculation of state personal income tax upon the federal tax calculation,[2] hence, taxpayers' finally ascertained federal adjusted gross income for tax years 1984, 1985 and 1986 is a critical fact to the issue presented before the OTC. Generally, federal deductions and exclusions allowed in calculating federal adjusted gross income are incorporated into our income tax law through the definitions of Oklahoma adjusted gross income and Oklahoma taxable income, while the federal tax rates, tax exemptions and tax credits are not included as part of our income tax law.[3] Thus, where a taxpayer reduces federal adjusted gross income by a loss suffered in any particular tax year, such as the repayment herein, Oklahoma recognizes the deduction for that same tax year. If the deduction generates a net operating loss which is allowed by the Internal Revenue Service (IRS) to be carried back as an adjustment to a prior year, then Oklahoma recognizes the federal adjustment for that same tax year.
The hearing officer and the OTC found that the federal income tax returns for the prior tax years were not reopened and therefore concluded there was no recomputation of tax payers federal adjusted gross income for those prior tax years upon the reporting of the 1987 repayment as authorized by 26 U.S.C. § 1341 (1976).[4] Our research indicates that the federal "claim of right" statute recognizes several methods of calculating the amount of overpayment of taxes, which may include finally ascertaining the amount subject to taxation by the United States in a prior year.
The federal "claim of right" statute, 26 U.S.C. § 1341 (1976), allows a taxpayer to recover overpayments of federal income taxes where previously reported income must be repaid. Under subsection (a), General rule., the amount of the overpayment of taxes may be calculated through an adjustment to arrive at taxable income for the tax year the money was repaid (repayment year) or through a credit adjustment to arrive at tax liability for the repayment year. The taxpayer must elect to reduce the adjusted gross income for the repayment tax year, § 1341(a)(4), or to reduce the tax liability for the repayment tax year, § 1341(a)(5). Where the taxpayer elects to calculate the overpayment prior to arriving at taxable income, subsection (b), Special rules., permits the taxpayer to further elect to adjust prior year income through a *967 carry-back deduction. It specifically provides that, where the deduction in (a)(4) results in a net operating loss for the repayment year, it may be carried back under § 172; and that, where the exclusion in (a)(5)(B) results in a net operating loss or capital loss for the prior tax years, for purposes of calculating the decrease in tax for the prior years, it may be carried back or carried over.
Federal jurisprudence recognizes the right of a taxpayer to elect the method of calculating the amount of overpayment of taxes pursuant to § 1341.[5] In United States v. Skelly Oil Company, the United States Supreme Court concluded that § 1341 does not, as a matter of law, adjust prior year income, but that it provides methods of tax calculation, not originally embodied in the "claim of right" doctrine, to avoid inequitable annual accounting limitations. Quoting Justice Brandeis in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, 1200, 1201 (1932), the United States Supreme Court explained the "claim of right" doctrine and § 1341:
"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." Should it later appear that the taxpayer was not entitled to keep the money, Mr. Justice Brandeis explained, he would be entitled to a deduction in the year of repayment; the taxes due for the year of receipt would not be affected. .... Of course, the tax benefit from the deduction might differ from the increase in taxes attributable to the receipt; for example, tax rates might have changed, or the taxpayer might be in a different tax "bracket." [Cite omitted.] But as the doctrine was originally formulated, these discrepancies were accepted as an unavoidable consequence of the annual accounting system.
Section 1341 of the 1954 Code was enacted to alleviate some of the inequities which Congress felt existed ... As an alternative to the deduction in the year of repayment which prior law allowed, § 1341(a)(5) permits certain taxpayers to recompute their taxes for the year of receipt. Whenever § 1341(a)(5) applies, taxes for the current year are to be reduced by the amount taxes were increased in the year or years of receipt because the disputed items were included in gross income. [Emphasis added.]
United States v. Skelly Oil Company, 394 U.S. 678, 680, 681, 89 S.Ct. 1379, 1381, 22 L.Ed.2d 642, 647 (1969).
The above authorities stand for the proposition that a claim under § 1341 may recompute adjusted gross income for prior years in determining the amount of the tax overpayment claimed in a subsequent year.[6] Thus, the validity of the finding by *968 the OTC that there is no recomputation of federal adjusted income for prior tax years by the IRS in determining the 1987 federal claim of overpayment of taxes depends on its evidentiary support.
The appellate courts will review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence.[7] An adjudicatory order will be affirmed on appeal if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error.[8]
Upon thorough examination of the record, we find no evidence showing which method of calculation of the federal claim was finally accepted by the IRS; whether the IRS considered the 1987 return as opening the returns for the involved prior tax years; and, whether the IRS, in determining the 1987 claim, allowed the federal adjusted income for the involved prior tax years to be recomputed.[9] The record is void of any evidence which supports the factual conclusions propounded by the Income Tax Division of the OTC, accepted by the hearing officer and adopted by the OTC, that the federal adjusted gross income for the involved tax years was not adjusted because the taxpayers did not file amended federal returns;[10] that the federal income tax returns for the years in which the income was received by the taxpayer were not reopened; and, that the federal adjusted incomes for the years the income was received were not recomputed.
On the other hand, the taxpayers' evidence indicates that the taxpayers included two calculations of their federal tax claim, based upon the repayment of $365,204.29, in their 1987 federal return.[11] The calculation labeled Method 2 appears to adjust the federal taxable income for the tax years *969 1984, 1985, and 1986. The hearing officer concluded that the federal adjusted gross income attributable to the gas proceeds was not changed.[12] This conclusion appears to be inconsistent with the taxpayers' Method 2 calculation and the hearing officer's finding that the taxpayers received refund of federal taxes paid attributable to the repaid gas proceeds in the amount of $153,900.00.[13] Without substantial evidence establishing that taxpayers' adjusted gross incomes for tax years 1984, 1985 and 1986, were not recomputed in the computation of the 1987 claim under 26 U.S.C. § 1341, Order No. 89-11-14-011 must be reversed and this cause must be remanded for further proceedings consistent with this opinion.
CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF APPEALS VACATED. ORDER OF THE OKLAHOMA TAX COMMISSION REVERSED. CAUSE REMANDED FOR FURTHER PROCEEDINGS.
OPALA, C.J., and LAVENDER, HARGRAVE, KAUGER and WATT, JJ., concur.
SIMMS, J., concurs in result.
HODGES, V.C.J., and SUMMERS, J., dissent.
SUMMERS, Justice, dissenting.
I agree with the first three paragraphs of Justice Hodges' writing insofar as he finds sufficient evidence in the record to show that the taxpayers used method 2 in calculating their 1987 federal income tax liability. I would hold the Duggers are thereby entitled to a refund.
HODGES, Vice Chief Justice, dissenting.
While I agree with the majority that if method 2, see I.R.C. § 1341(a)(5), is used the Duggers are entitled to a refund, I must dissent in part for two reasons. First, there is sufficient evidence in the record to show that the Duggers used method 2 in their calculations of their 1987 federal income tax liability. Second, under either method, the Duggers should be allowed a refund.
The record before this Court contains the Duggers' 1987 federal income return. Pages 141 and 142 of the record show that the Duggers would have a 1987 tax liability of zero under method 1, see I.R.C. § 1341(a)(4). Pages 142, 143, and 144 of the record show that, under method 2, the Duggers would have a negative tax liability of $125,878.00 for 1987. Therefore, the Duggers were required by section 1341 of the Internal Revenue Code to use method 2 because it resulted in the lesser amount of tax.
Under method 2, the Duggers had a $153,900 credit on their 1987 taxes. The Duggers' 1987 federal income tax return was made a part of the record. On line 61, entitled "total payments" of that return, the Duggers entered $153,900 as a credit. There is no evidence in the record that this return was not accepted by the Internal Revenue Service. Further, the hearing officer found that the Duggers had received "the refund of taxes paid attributable to those gas royalties in the amount of $153,900.00." Therefore, the record supports a finding that the Duggers used method 2 in their calculations.
No matter which method the Duggers used, they were entitled to a refund on their state taxes. The majority argues that, if a taxpayer's federal adjusted gross income is not recalculated because of the claim of right, then the taxpayer is not entitled to a refund of state income taxes. Oklahoma's state income tax is based on federal income taxes. Section 2353(13) of title 68 defines "Oklahoma adjusted gross income" as "`adjusted gross income' as reported ... to the federal government" with any adjustments by the federal or state law. This provision does not require an amended federal return or a recalculation of the federal adjusted gross income for a given tax year. Further, the Oklahoma adjusted gross income is based on *970 the adjusted gross income reported to the federal government.
On their 1984, 1985, and 1986 federal and state returns, the Duggers reported the payment of the excess royalties as part of their federal tax return. Then in 1987, they reported the return of those funds. Even though the federal government did not correct the 1984, 1985, and 1986 returns, the correct amount was reported to the federal government. The Internal Revenue Code (IRC) recognizes that, in a situation such as this, the adjusted gross income on the federal tax returns for year improper income was received was not an accurate reflection of the actual gross income and provides for adjustments under section 1341 of the IRC.
Section 2353(13) bases state income tax on the adjusted gross income as reported to the federal government with adjustments made under the Internal Revenue Code. The IRC makes adjustments for a "claim of right" under section 1341. Based on section 2353(13), the adjustments should be recognized and a refund allowed.
The primary goal in construing statutes is "to follow the intent of the legislature." Ledbetter v. Alcoholic Beverage Laws Enforcement Comm'n, 764 P.2d 172, 179 (Okla. 1988). Section 2353(13) is a clear statement that the legislature intended that, if the adjusted gross income tax reported to the federal government was incorrect and an adjustment was made, the state income tax should be based on this adjusted amount. The majority, by the construction placed on Oklahoma tax laws, frustrates this intent of the legislature.
A second rule is "statutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits." Id. The result reached by the majority ignores this rule. Under the majority opinion, the Duggers would not be allowed a refund of state income taxes if they used method 1 (computing the tax for the taxable year with a deduction for the "claim of right") but would be allowed a deduction if they used method 2 (computing the tax for the taxable year without a deduction for the "claim of right" and subtracting the decrease in tax based on the "claim of right" for the year that the amount was improperly paid). This reaches the inane result that, if a taxpayer is required to use method 1 rather than method 2, he is not entitled to a state tax refund. But if he is compelled to use method 2, he may receive a refund of state tax. Allowing a refund based on section 2353(13) under either method 1 or method 2 allows a rational result, rather than the absurd result reached by the majority.
For the above reasons, I dissent.
NOTES
[1] Record, page 189, Order, page 3.
[2] 68 O.S. 1991, § 2353. The federal/state "piggy-back" system has been in effect in Oklahoma since enactment of the 1971 income tax code, pursuant to constitutional amendment in 1968. State Question No. 444, Legislative Referendum No. 160, adopted Aug. 27, 1968. The statutory definitions of "Oklahoma taxable income" and "Oklahoma adjusted gross income" mirror the constitutional language in Okla. Const., Art. 10, § 12, which provides that "the Legislature may ... define the amount ... by which any such tax or taxes are imposed or measured ... by reference to any amount or amounts finally ascertained in determining amounts subject to taxation by the United States ... ." [Emphasis added.]
[3] 68 O.S. 1981, §§ 2352, et seq. now codified, as amended, at 68 O.S. 1991, §§ 2352, et seq.
[4] Record, page 193; Order, page 7, states:

The federal claim of right doctrine provides for a credit of taxes in the year of repayment of the income by the taxpayer. The federal income tax return for the year in which the income was received by the taxpayer is not reopened. There is no recomputation of federal adjusted income for the year the income was received. 26 U.S.C. § 1341. [Emphasis added.]
[5] United States v. Skelly Oil Company, 394 U.S. 678, 680, 681, 89 S.Ct. 1379, 1381, 22 L.Ed.2d 642, 647 (1969).
[6] The OTC argues that § 1341 creates a federal tax credit, which is not incorporated into our state income tax laws by virtue of our "piggy-back" system, and that the state income tax code does not have a parallel credit. The OTC does not cite any federal authority establishing § 1341 as a tax credit statute and our research has revealed none. However, in 26 U.S.C. § 6411(d), § 1341 is treated as authorizing a taxpayer to make application for a refund of prior overpayments, whether that refund is manifested as a credit against taxes due and owing or as an actual tax refund. Section 6411(d) statutes, in part:

(1) Application.  A taxpayer may file an application for a tentative refund of any amount treated as an overpayment of tax for the taxable year under section 1341(b)(1). Such application shall be in such manner and form as the Secretary may prescribe by regulation ...
(2) Allowance of adjustments.  Within a period of 90 days from the date on which the application is filed under paragraph (1) or from the date of the overpayment (determined under 1341(b)(1), whichever is later, the Secretary shall 
(A) review the application,
(B) determine the amount of the overpayment, and
(C) apply, credit, or refund such overpayment,....
[7] State v. Oklahoma State Board for Property and Casualty Rates, 731 P.2d 394, 404 (Okla. 1986) and Suglove v. Oklahoma Tax Commission, 605 P.2d 1315, 1318 (Okla. 1980).
[8] Baumgardner v. State ex rel. Department of Human Services, 789 P.2d 235, 236 (Okla. 1990); and Tulsa Area Hospital Council, Inc. v. Oral Roberts University, 626 P.2d 316, 320 (Okla. 1981). See also, Snider v. Board of Trustees for the Oklahoma Police Pension and Retirement Board, 782 P.2d 911 (Okla. 1989); Oklahoma Park, Inc. v. Oklahoma Horse Racing Commission, 716 P.2d 666 (Okla. 1986); and, Humana Hospital Corporation, Inc. v. Oklahoma Health Planning Commission, 705 P.2d 175 (Okla. 1985).
[9] The evidence in this cause consists of seventeen exhibits that were offered by the taxpayers without objection and admitted at the hearing before the hearing officer. These exhibits include state and federal tax returns for tax years 1984 through 1987; letters claiming refunds of income taxes and denying the claims; the protest (pleading initiating the adjudicatory process) and position letters (briefs submitted by counsel during the adjudicatory protest proceeding); and, letters relating to the procedural aspects of the adjudicatory proceeding. The OTC denied taxpayers request for hearing before the three Commissioners, thus the protest was decided upon the taxpayers' documentary evidence.

The Income Tax Division presented no evidence which would support its conclusion that federal adjusted gross incomes for prior years were not finally ascertained by the 1987 claim. Explanation of the taxpayers' state and federal tax calculations and the effect of the application of the policies of the state and federal agencies (OTC and IRS), whether presented by oral or written testimony of staff experienced in the area, is invaluable in the administrative adjudication of tax protests. The experience and working knowledge of an agency is the foundational reason for administrative adjudication in advance of judicial intervention. Ledbetter v. Alcoholic Beverage Laws Enforcement Commission, 764 P.2d 172, 180-181 (Okla. 1988). The substantial evidence requirement in administrative law is grounded in the concept of agency expertise, as is the doctrine of exhaustion of administrative remedies.
In the absence of evidence to support the findings and conclusions of the OTC, the dissent would have this Court make findings of fact from the face of taxpayers' 1987 federal return. This Court must reverse and remand for further proceedings if the agency findings and conclusions are defective. Baumgardner v. Department of Human Services, 789 P.2d 235, 239 (Okla. 1990). It is the role of the trial court or adjudicatory agency to find the facts. Matter of the Estate of Crowl, 737 P.2d 911, 914 (Okla. 1987).
[10] Record, pages 47 and 87.
[11] Record, pages 141-144.
[12] Record, pages 192-193, Order, pages 6-7; and, Record, page 193, Order, page 7.
[13] Record, page 188, Order, page 2.