2001 OK CIV APP 41

In The Matter of The Tax Protest of J.B. and Marsha E. LLOYD, J.B.

Lloyd and Marsha E. Lloyd, Protestants/Appellants,

v.

State of Oklahoma, ex rel., Oklahoma Tax Commission, Respondent/Appellee.

No. 94,896.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 9, 2001.

Stephen E. Hale, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, Oklahoma, for Protestants/Appellants.

Thomas E. Kemp, Jr., Laronna Harris, Oklahoma City, Oklahoma, for Respondent/Appellee.

HANSEN, Chief Judge.

¶1 Appellants, J.B. and Marsha Lloyd (Lloyds), bring this appeal from the Oklahoma Tax Commission's (OTC) denial of their protest of a tax assessment for the tax year 1996. We find OTC properly denied the Lloyds' protest and affirm.

¶2 The facts are not in dispute. Appellant Marsha Lloyd is a member of the Choctaw Tribe (Tribe) of Oklahoma, a federally recognized Indian tribe. During the tax year 1996, she was employed by Tribe on land held in trust for Tribe by the United States. Marsha Lloyd concedes that during the 1996 tax period she did not reside in "Indian Country", as that term is defined by law.[1]

¶3 Lloyds subtracted Marsha's income from the Tribe on their 1996 Oklahoma income tax return. They claimed the tribal income was exempt from Oklahoma tax because "[c]ompensation paid to members of a federally recognized Indian tribe by the tribe for work in Indian Country was not subject to Oklahoma personal income tax."

¶4 The Audit Division of OTC disallowed the exclusion because Lloyds' principal place of residence was not "an Indian allotment, restricted or held in trust by the United States." Upon protest, OTC unanimously adopted the hearing examiner's report recommending the protest be denied. Appellants appealed the OTC order pursuant to 68 O.S. Supp.2000 § 225. In our review pursuant to § 225, we will affirm an OTC order if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error. *Dugger v. Oklahoma Tax Commission*, 1992 OK 105, 834 P.2d 964; *El Paso*

1. *See,* 18 U.S.C. § 1151, as amended, for definition of "Indian Country."

*Natural Gas Co. v. Oklahoma Tax Commission,* 1996 OK CIV APP 69, 929 P.2d 1002.

¶ 5 The hearing examiner's report adopted by OTC noted the state was precluded from taxing income of a member of a federally recognized Indian tribe who both earns that income on, and lives within, Indian Country governed by the member's tribe. *Oklahoma Tax Commission v. Chickasaw Nation,* 515 U.S. 450, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995); *Oklahoma Tax Commission v. Sac and Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993); and *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The report, however, citing *Chickasaw Nation,* 115 S.Ct. at 2217, concludes the state "may tax income (including wages from tribal employment) of all persons, Indian and non-Indian alike, residing in the State outside Indian country."

¶ 6 Lloyds concede *Chickasaw Nation* supports the hearing examiner's conclusion regarding taxing tribal income where the member does not reside in Indian Country, and they do not dispute the facts here would support applying the *Chickasaw Nation* holding to Marsha Lloyd's tribal income. Nevertheless, Lloyds argue *Chickasaw Nation* recognizes another theory of income exemption which would preclude state taxation of her income, notwithstanding that they do not reside in Indian Country. This second theory is grounded in the federal government's duty to protect against a state's infringement on a tribe's right to self-governance.

¶ 7 *Chickasaw Nation* considered, among other things, Oklahoma's right to tax tribal member's income from tribal sources. The *Chickasaw Nation* Court acknowledged Indian tribes and their members were generally immune from state taxation, but, citing *Sac and Fox Nation, supra,* found this rule did not apply outside Indian Country. The Court was unpersuaded by the tribe's contention state taxation impaired rights granted to the tribe by the Treaty of Dancing Rabbit Creek, signed in 1837. That treaty, the Court held, applied only "within [the Nation's] limits", that is, Indian County. The Court continued:

We do not read the Treaty as conferring supersovereign authority to interfere with another jurisdiction's sovereign right to tax income, from all sources, of those who choose to live within that jurisdiction's limits.

¶ 8 The *Chickasaw Nation* Court's only mention of a self-governance theory of tribal exemption was in noting the tribe did not assert the argument that the state income tax "infringes on tribal self-governance." The Court therefore refused to substantively consider that question which was suggested in the U.S. Government's *amicus* brief.

¶ 9 The *Chickasaw Nation* Court also noted the *Sac and Fox Nation* Court had reserved the question "whether the Tribe's right to self-governance could operate independently of its territorial jurisdiction to preempt the State's ability to tax income earned from work performed for the Tribe itself when the employee does not reside in Indian Country." The *Sac and Fox Nation* Court, holding residence of the tribal member is a significant component of the presumption against state taxing authority set out in *McClanahan, supra,* remanded the case to the circuit court to determine members' residences. Because on remand all the members might be found to reside in Indian County, the Court found no need to consider the self-governance question.

¶ 10 While both *Chickasaw Nation* and *Sac and Fox Nation* raise the possibility that infringement on a tribe's right of self-governance *might* support an exemption from state taxation, neither holds that it does. In fact, Lloyds primarily rely on the dissent in *Chickasaw Nation* to support their contention of exemption. That dissent would find the Treaty of Dancing Rabbit Creek did apply, and would look to the treaty provision promising to secure the tribe "from, and against, all laws" for the government of the tribe, except for those made by the tribe itself or by Congress.

¶ 11 The *Chickasaw Nation* dissent states, "[t]he impact of the tax upon tribal wages, tribal members and tribal land makes it possible, indeed reasonable, to consider Oklahoma's tax (insofar as it applies to these

tribal wages) as amounting to a law 'for the government of' the Tribe." Adopting that rationale, Lloyds generally assert state taxation of Marsha Lloyd's income from the tribe "affects significantly and directly the way in which the Tribe conducts its affairs in areas subject to Tribal jurisdiction."

¶ 12 However, Lloyds are less forthcoming in detailing specifically how the tribe is affected by state imposition of the income tax here. They only offer that the tribe will be required to increase wages to compensate for the net loss to employees who have to pay the tax. Even if this contention were true, there is no evidence that it is. Basing a decision on that contention would require gross speculation.

¶ 13 OTC's determination is founded in the rule clearly set forth in *Chickasaw Nation*, and Lloyds effectively stipulate to facts which support applying that rule here. Lloyds contend application of the *Chickasaw Nation* rule would illegally infringe on the Choctaw Tribe's right of self-governance. Lloyds fail, however, to direct this Court to any case in which that theory has been suc-cessfully invoked under circumstances analogous to those here, and have further failed to provide any evidence, even assuming a self-governance theory was proper, that infringement could be established.

¶ 14 There is substantial evidence in support of the facts upon which OTC's decision is based, and we find no error of law. *Dugger v. Oklahoma Tax Commission*, 834 P.2d at 968. Accordingly, OTC's order is AFFIRMED.

¶ 15 BUETTNER, P.J., concurs;

¶ 16 GARRETT, J., concurring in result.

GARRETT, J., concurring in result:

¶ 1 I disagree with portions of paragraphs 12 and 13.