2008 OK CIV APP 80

**SNIDER BROS., L.L.C., an Oklahoma limited liability company, Petitioner/Appellee,**

v.

**STATE of Oklahoma, ex rel., the OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Respondent/Appellant.**

Nos. 104,033, 104,398.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 7, 2007.

Certiorari Dismissed Sept. 25, 2008.

Tracy D. Baldwin, Oklahoma Employment Security Commission, Oklahoma City, OK, for Respondent/Appellant.

Randy Mecklenburg, Harrison and Mecklenburg, Inc., Kingfisher, OK, for Petitioner/Appellee.

CAROL M. HANSEN, Presiding Judge.

¶ 1 Appellant, Oklahoma Employment Security Commission (hereafter Commission), appeals from the trial court's orders [a] reversing the order of Commission's Assessment Board, and [b] awarding attorney fees and costs to Appellee, Snider Bros., L.L.C. (hereafter Snider Bros.).

## ISSUE BEFORE COMMISSION

¶ 2 While there is some limited factual controversy, the pivotal question before us is one of law, *i.e.,* whether Snider Bros. may qualify as a *partial* "successor employer" in accordance with 40 O.S.Supp.2004 § 3–111(C), which is part of the Oklahoma Employment Security Act of 1980, 40 O.S.2001 §§ 1–101 *et seq.,* (hereafter, the Act). The partial successor employer designation would allow Snider Bros. to acquire a portion, rather than all, of the "experience rating account" of the "predecessor employer," Snider's Enterprises, Inc. (hereafter Snider's Enterprises), for the purpose of computing employer contributions to the Act's Unemployment Compensation Fund.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 Snider's Enterprises owned separately franchised restaurants in the towns of Watonga and Kingfisher, both in Oklahoma. Snider Bros. concedes the Watonga location was closed in 2003. Snider Bros. purchased the Kingfisher location in a sale which closed on November 9, 2004. The owners of Snider Bros. are Brent and Zachary Snider. The shareholders of Snider's Enterprises are Jack and Karen Snider, the parents of Brent and Zachary. There was no common ownership in the two entities, nor were the principals in each involved in the operation of the other.

¶ 4 Commission contends here, as it did in the proceedings within Commission, that 40 O.S.Supp.2004 § 3–111(A) applies under the

facts presented, rather than § 3–111(C). Section 3–111, provides, in relevant part:[1]

A. Any employing unit, ..., which acquires substantially all of the trade, organization, employees, business, or assets of any employer ... and continues the operations of the predecessor as a going business, shall acquire the merit rating account of the predecessor employer, including the predecessor's actual contribution and benefit experience, annual payrolls, and contribution rate....

...

C. Any employing unit, ..., which acquires substantially all of the trade, organization, business, or assets of an employer, *at one or more separate and distinct establishments* and who continues the acquired operations of the predecessor as a going business, shall acquire that portion of the experience rating account of such employer that is applicable to such establishment or establishments, if such employing unit, immediately after such acquisition, is an employer; provided, however that such employing unit shall not acquire such portion of the experience rating account unless written application therefor is received by the Commission within one hundred twenty (120) days after the date of such acquisition together with evidence sufficient for the Commission to determine which portion of the experience rating account of the predecessor is applicable to the acquired operations, and the Commission finds that such transfer will not tend to defeat or obstruct the object and purpose of the Employment Security Act of 1980.... For the purpose of this subsection a separate and distinct establishment means all operations conducted by an employer at one business location which is readily segregable and identifiable as a separate business organization. (Emphasis added).

¶ 5 When Snider's Enterprises closed the Watonga franchise in 2003, employees from that location received unemployment benefits from Commission, which pursuant to the Act resulted in a substantial increase in its required contribution rate to Commission on the payroll of its remaining employees.[2] With a view to avoiding assumption of this increased contribution rate, Snider Bros., upon purchase of the Kingfisher location, made timely application to Commission pursuant to § 3–111(C) to acquire only that portion of Snider's Enterprises' "experience rating account" which pertained to that location.

¶ 6 Commission denied the application based on a *Field Auditor's Report* which found Snider Bros. had "acquired all of the existing business of the predecessor on 11/8/2004." The field auditor's determination was in turn based on finding Snider's Enterprises' Watonga location had been "closed down with new ownership approximately July 6, 2003." Commission concluded Snider Bros. had "acquired substantially all of the organization, employees, trade, business or assets" of Snider's Enterprises, making it the successor to Snider's Enterprises account pursuant to § 3–111(A).

¶ 7 Snider Bros. appealed denial of its application in accordance with Commission's internal appellate process, again asserting applicability of § 3–111(C) under the facts set out in its appeal letter. Among other things, Snider Bros. argued—"The fact that the portion of the business which was not acquired is no longer in business has no bearing under the statute (§ 3–111(C)) on whether only a portion of a predecessor's experience rating may be acquired." The appeal was heard by a Hearing Officer of Commission's Assessment Board. Testimony was received from a Tax Enforcement

---

1. The quoted provisions of § 3–111 were those in effect on the date the sale closed. Section 3–111 has since been amended and renumbered without material change to the quoted provisions.

2. The record reflects that prior to the 2003 closing of the Watonga location, the experience rating at the Kingfisher location of Snider's Enterprises was .2 percent. After the business closing, Snider's Enterprises' experience rating was increased to 5.4 percent. Snider Bros. rating prior to purchase of the Kingfisher location, earned at a similar franchise in Newcastle, Oklahoma, was also the lowest experience rating, *i.e.* .2 percent. The increase resulted in a tax increase from approximately $580.00 for four quarters to approximately $11,800.00 for the same four quarters.

Officer Supervisor from Commission regarding its determination on Snider Bros.' application and from Brent Snider regarding the restaurant purchase and status of the two Snider's Enterprises' locations.

¶ 8 In his *Order of Decision,* the Hearing Officer found § 3–111(A) applicable under the evidence presented and held Snider Bros. was a "full successor" to Snider's Enterprises' "merit rating account", including the contribution rate. In affirming Commission's determination, the Hearing Officer reasoned, in paragraph five of the order:

The employer asserts they should be entitled to only a partial successorship based solely on the experience rate earned by the Kingfisher location because they did not purchase any assets of the Watonga location. This assertion is without merit. The employer witness did not know if the predecessor even retained any of the equipment or the building at Watonga. Even if the Predecessor did retain some unused equipment and/or a vacant building, the Successor would still have acquired *substantially all* of the assets of the predecessor. (Emphasis in original). A non-existing business is hardly a significant portion of the corporate assets, if it may be considered an asset at all.

¶ 9 Snider Bros. filed a *Petition for Review* in the trial court asking the court to reverse the Assessment Board's decision and remand the matter to Commission to [1] reduce Snider Bros.' contribution rate as a "partial successor employer", with such reduction dated back to the time of its acquisition of the Kingfisher property, and [2] refund "excess taxes, penalties and interest." Snider Bros. and Commission briefed the issues for the trial court and were allowed oral argument.

¶ 10 The trial court found Snider Bros. had established it was entitled to a determination it was a "partial successor" in accordance with § 3–111(C) and "to acquire only that portion of the experience rating account of Snider's Enterprises, Inc. applicable to the Kingfisher KFC/Taco Bell restaurant." The trial court further found, pursuant to 75 O.S. 2001 § 322(1)(e) and (f),[3] that Snider Bros.' "substantial rights" had been prejudiced because the Assessment Board order on appeal was "clearly erroneous in view of the reliable, material, probative and substantial competent evidence and that said order is arbitrary or capricious." The trial court ordered Commission to refund "all remittances made by [Snider Bros.] since Nov. 8, 2004, including penalties and interest, which exceed the amount owed as determined by the adjusted experience rating." The trial court reserved Snider Bros.' request for attorney fees and costs. Commission initiated the present appeal from that order.

¶ 11 After Commission had filed its *Petition in Error,* Snider Bros. filed a motion in the trial court to be awarded attorney fees and costs. The trial court granted the motion. The trial court found the actions of Commission "in handling Petitioner's Application for Partial Successor Status and Petitioner's subsequent agency appeal were in bad faith, vexatious, wanton and oppressive." The court further found "that failing to award attorney's fees under these circumstances would deny Petitioners the right to be treated fairly by their government and would further deny them remedy when the government acts oppressively, vexatiously, wantonly and in bad faith." Commission appealed from the award of attorney fees by a separate *Petition in Error* and the matters were consolidated by the Supreme Court for our review.

## STANDARD OF REVIEW

¶ 12 At 40 O.S.2001 § 3–404, the Act provides the standard of judicial review for appeals from Commission's Assessment Board:

were [1] "clearly erroneous in view of the reliable, material, probative and substantial competent evidence ... but without substituting its judgment as to the weight of the evidence for that of the agency on question of fact", or [2] "arbitrary or capricious."

---

**3.** Section 322(1)(e) & (f) of the Administrative Procedures Act authorizes the reviewing court to set aside or modify an agency order, or to reverse and remand it to the agency for further proceedings if it determines the substantial rights of the petitioner have been prejudiced because, *inter alia,* the agency's findings or determination

In any judicial review under this part the findings of the Commission, or its duly authorized representative, as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

¶ 13 In addressing judicial review of determinations from Commission's Board of Review, which has a statutory standard substantially the same as that in § 3–404, the Court of Civil Appeals noted—"When the district court reviews a decision of the Board of Review, it sits as an appeal tribunal and its jurisdiction is limited to the consideration of the transcript and the arguments of counsel to determine whether an error of law was committed in the hearing and whether the factual findings are supported by the evidence." *First Place v. Okl. Employment Sec. Com'n*, 2006 OK CIV APP 135, 146 P.3d 862, citing *Vester v. Board of Review of Okla. Employment Sec. Com'n*, 1985 OK 21, 697 P.2d 533, in turn citing, *In re White*, 1960 OK 188, 355 P.2d 404. Our standard of review is the same as that of the trial court. *Gilchrist v. Board of Review of Oklahoma Employment Sec. Com'n*, 2004 OK 47, 94 P.3d 72.

■ ¶ 14 The Oklahoma Supreme Court has determined the phrase, "if supported by evidence," as found in § 3–404, "means evidence which is substantial, that is, affords a substantial basis in fact from which the fact in issue can be reasonably inferred." *Oklahoma Employment Sec. Com'n v. Sanders*, 1954 OK 155, 272 P.2d 379. The Court went on to state it was Commission's function to weigh the evidence and make findings, which findings must be accepted on judicial review if supported by substantial evidence and not clearly erroneous. Commission may not, however, "arbitrarily discredit and disregard unimpeached, competent and relevant testimony which is uncontradicted." *Sanders*, 272 P.2d at 381.

## APPELLATE ISSUES

¶ 15 On appeal here, Commission has briefed two propositions asserting trial court error. In the first, Commission contends the trial court's finding that Snider Bros. met the criteria of a partial successor pursuant to § 3–111(C) was not supported by substantial evidence and must be reversed. As its second proposition, Commission contends the trial court's award of attorney fees and costs to Snider Bros. was contrary to law and must also be reversed.

## APPLICABLE STATUTORY AUTHORITY—SUCCESSORSHIP

■ ¶ 16 The trial court's finding that Snider Bros. had established entitlement to partial successorship is contrary to the findings of the Hearing Officer which were the basis of the Assessment Board's *Order of Decision*. The dispositive factual findings of the Hearing Officer, as set forth in context at paragraph 8 above, were that Brent Snider did not know if Snider's Enterprises "retained any of the equipment or the building at Watonga" and that "[e]ven if [Snider's Enterprises.] did retain some unused equipment and/or a vacant building, [Snider Bros.] still would have acquired *substantially all* of the assets of the predecessor."

¶ 17 However, Commission's counsel conceded during argument before the trial court that neither of the Hearing Officer's foregoing findings of fact was supported by the evidence. It is thus uncontroverted there was no "substantial evidence" of record in support of the Assessment Board's findings which led to the conclusion Snider Bros. was a "full successor." The disputed findings were therefore "clearly erroneous" pursuant to 75 O.S.2001 § 322(1)(e). Commission's counsel nonetheless argued § 3–111(A) was still applicable because the record was "full of evidence" that Snider Bros. had purchased "all of the business of Snider (sic) Enterprises." Commission's counsel further conceded the Hearing Officer improperly "focused only on the asset part of this." He contended the appropriate action for the trial court to take was to remand the matter to Commission for reconsideration of the administrative record.

¶ 18 Rather than reverse the Assessment Board's unsupported conclusion that § 3–111(A) controlled and remand the matter to Commission, the trial court entered its own findings from the record that Snider Bros. had established it was entitled to a determi-

nation it was a "partial successor" in accordance with § 3–111(C). The trial court made no specific findings of fact, rather basing its determination on the conclusion that Snider Bros. had "established that it acquired substantially all the trade, organization, business or assets of Snider's Enterprises, Inc., at a separate and distinct establishment." We hold the trial court erred in its determination.

¶ 19 In determining if Commission's findings and conclusions are supported by substantial evidence, we, and the trial court in its appellate capacity, must review the entire record. *City of Hugo v. State ex rel. Public Employees Relations Bd.*, 1994 OK 134, 886 P.2d 485. We may affirm agency adjudicatory orders only "if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free from error." *Id.*, at 489. In the absence of such evidence, the Assessment Board's order may not be affirmed, but, in reviewing the entire record, as we must, we find no evidence to support the trial court's conclusion that § 3–111(C) applies.

¶ 20 "In construing statutes, relevant provisions must be considered together whenever possible to give full force and effect to each." *Independent Finance Institute v. Clark*, 1999 OK 43, 990 P.2d 845. Legislative intent is ascertained from the whole act in light of its general purpose and objective. *Id.*, at 850. The stated purpose of the Act is to lighten the burden of unemployment "which now so often falls with crushing force upon the unemployed worker and his family." 40 O.S.2001 § 1–103. One method of achieving this goal is the "compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." *Id.* This setting aside is done by employer contributions as prescribed in Article 3 of the Act, § 3–101 *et seq.* Section 3–111 is part of that statutory structure.

¶ 21 When enacted in 1936, the language of the predecessor to § 3–111 was substantially the same as § 3–111(A). The provision which is now § 3–111(C) was not enacted until 1947. *Laws 1947, p. 299, §§ 1, 2.* Thus, § 3–111(C) came into effect as an exception to § 3–111(A), and should be applied only if § 3–111(A) is found not to apply under the facts presented. That is, if an employer, by acquiring substantially all of the trade, organization, business, or assets *at a separate and distinct location,* also acquires substantially all the trade, organization, employees, business, or assets of the predecessor employer *at all locations,* § 3–111(A) must be applied, and not § 3–111(C). It is important to note the Legislature's use of the disjunctive "or" in the list of things in § 3–111(A) which may be acquired. It is only required for the successor to acquire substantially all of one of the requisite items for that sub-section to apply. *Express Bus, Inc. v. Oklahoma Employment Sec. Com'n,* 2007 OK CIV APP 30, 157 P.3d 1180.

¶ 22 In considering the two sections together, we note a material difference, relevant here, in the wording used to prescribe what must be acquired by a successor employer for the respective sections to pertain. Section 3–111(A) contains "employees" while § 3–111(C) does not. "Employees" was added to § 3–111(A) by an amendment to the Act in 2004. *Laws 2004, c. 102, § 7, eff. Nov. 1, 2004.* Thus, as noted above, even if an acquiring employer acquires *substantially all* the trade, organization, business, or assets of the predecessor employer at a separate and distinct establishment, but some predecessor assets remain at another "establishment", as appears to be the case here, § 3–111(A) nevertheless applies if the acquiring employer acquires *substantially all* the predecessor employer's employees. In its Regulations implementing the Act, Commission has defined "substantially all", in the context of § 3–111, to mean "that the successor or acquiring employer has acquired the predecessor's trade, employees, organization, business or assets to such an extent that the predecessor is unable to continue in business." *O.A.C. 240:10–5–2.*

¶ 23 Snider Bros. acknowledged no Snider's Enterprises employees had worked at the Watonga location after that location closed in 2003. *All* of Snider's Enterprises' employees were thus working at the King-

fisher location after that time and Snider Bros. admittedly acquired those workers. Even if Snider's Enterprises retained assets in Watonga after sale of the Kingfisher location, it would not have been able to continue in business without employees.

¶ 24 Employees remaining at a predecessor employer are particularly relevant to the question before us because it is through employers' contributions, based in part on employees' wages, that the Unemployment Compensation Fund is replenished. The statutory contribution scheme provides for higher contribution rates for employers whose employees have drawn benefits. It is an experience based scheme. This requires a successor employer to assume the experience rating of the predecessor, which may work to the advantage or disadvantage of the successor.

¶ 25 If, as here, the predecessor employer retains no employees, the Unemployment Compensation Fund will not be replenished at the rate dictated by statute if Snider Bros., as successor, is only required to assume the experience rating from Kingfisher. This runs counter to one of the stated purposes of the Act, compulsory setting aside of unemployment reserves adequate to provide benefits to those unemployed through no fault of their own. While 3–111(C) recognizes unemployment experience may vary by establishment in an employing entity, and allows an acquiring employer to assume the experience rating specific to one establishment, the Legislature must have contemplated the predecessor employer would have some employees remaining.

¶ 26 Pursuant to § 3–111(C), Snider Bros. had the burden to provide Commission with evidence sufficient to establish it was entitled to assume only that portion of Snider's Enterprises experience rating account applicable to the acquired operations. It did not meet that burden. We are not required to weigh the evidence to reach that conclusion because the operative facts are not contested. In fact, we are constrained from doing so. *Dugger v. State ex rel. Oklahoma Tax*

*Com'n,* 1992 Ok 105, 834 P.2d 964. It is the role of the trial court or Commission to find the facts. *Id.,* at 970, note 9. The trial court erred in making its findings. Therefore, we reverse the trial court's order finding Snider Bros. was entitled to partial successorship and remand the matter to Commission for a new order consistent with this opinion.

## DISCUSSION OF ATTORNEY FEES AWARD

¶ 27 Reversing the trial court's order on the successorship issue does not automatically dictate reversal of the attorney fee award because the award was not made on a prevailing party status. We nonetheless hold the award of attorney fees was improper for lack of legal authority.

## STANDARD OF REVIEW

¶ 28 An award of attorney fees is particularly within the sound discretion of the trial court and the court's decision will not be disturbed unless there is an abuse of such discretion. *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.,* 1987 OK 16, 737 P.2d 1186. We will strictly construe any authority for fees and expenses. *Borst v. Bright Mtg. Co.,* 1991 OK 121, 824 P.2d 1102 at n. 5.

¶ 29 The Oklahoma Supreme Court has held, and reaffirmed, the American Rule governs the right of a litigant to recover attorney fees in this jurisdiction; thus, generally there must be a statutory or contractual basis for the award. *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2000 OK 55, 11 P.3d 162. There is no contract involved here and, as argued by Commission, the statutory authority most relevant to these proceedings, 75 O.S.2001 § 318(D)(2),[4] is not applicable where it did not initiate the proceedings. *Lucas v. State ex rel. Oklahoma Dept. of Human Services,* 2000 OK CIV APP 79, 9 P.3d 89.

¶ 30 Snider Bros. asserts that while § 318(D)(2) may not provide a basis for the trial court's attorney fees award, it does not

---

4. 75 O.S.2001 § 318(D)(2)—The party aggrieved by the final agency order may be entitled to recover against such agency any ... reasonable attorney fees if the court determines that the proceeding *brought by the agency* is frivolous. (Emphasis added).

preclude an award where *City National Bank & Trust Co. of Oklahoma City v. Owens,* 1977 OK 86, 565 P.2d 4 applies. *Owens* established the "bad faith, wanton or oppressive litigation misconduct" exception to the American Rule. *Barnes v. Okl. Farm Bureau Mut. Ins. Co.,* 2004 OK 25, 94 P.3d 25. However, Snider Bros. misreads, and the trial court apparently misapplied, the *Owens* exception.

¶ 31 In *Owens,* attorney fees were awarded where the plaintiff dismissed its case without prejudice after four days of trial, after all the evidence and testimony had been introduced, the parties had rested and the court had prepared instructions. Whereas, here, the evidence of record reflects, as set forth in the trial court's order, the attorney fees award was made in consideration of "the actions of [Commission] in handling [Snider Bros.'] Application for Partial Successor Status and [Snider Bros.'] subsequent agency appeal." Snider Bros.' allegations involve malfeasance during Commission's administrative proceedings, not during the trial court litigation.

¶ 32 In *Barnes,* 94 P.3d at 30, the Supreme Court held an award of attorney fees pursuant to *Owens* was not appropriate where "the conduct complained of was not oppressive during litigation." In *Barnes,* the alleged misconduct was bad faith by an insurer in handling an uninsured motorist claim. Here, as noted, the alleged misconduct is bad faith in handling Snider Bros.'s application for partial successorship. In both cases, the request for attorney fees is based on *pre-litigation* conduct.[5]

¶ 33 The trial court's orders are REVERSED and the matter is REMANDED to Commission for entry of an order consistent with this opinion.

BELL, J., concurs.

BUETTNER, J., concurring in part and dissenting in part.

¶ 34 I concur that the attorneys fee award should be reversed; however, I disagree with

the majority opinion insofar as it holds that 40 O.S. § 3–111(A) applies as a matter of law in this case.

¶ 35 Appellee submitted sufficient evidence to show that it acquired a separate and distinct establishment and continued the operations of Snider Enterprises at the Kingfisher location. It therefore arguably met the requirements of 40 O.S. § 3–111(C).

¶ 36 What is unclear is what happened to the Watonga location and whether Snider Enterprises continued in operation. The Commission's argument that Snider Brothers acquired substantially all the assets of Snider Enterprises is based on conjecture and supposition. As stated in Paragraph 17 of the majority opinion, the "Commission's counsel conceded during argument before the trial court that neither of the Hearing Officer's foregoing findings of fact was supported by the evidence." If not supported by the evidence, the Commission's order should be reversed.

¶ 37 I respectfully dissent.

---

**5.** *See also, Sooner Trailer Manufacturing Co. v. Gay,* 1998 OK CIV APP 194, 972 P.2d 1177. (*Owens* exception did not apply because "[t]he egregious conduct which *City National* addressed was bad faith conduct during the litigation, not the conduct occurring which gave rise to the litigation.")