242 P.3d 578 (2010)
2010 OK CIV APP 121
In re PROTEST TO the CERTIFICATE OF TITLE BRAND ISSUED TO AAAA WRECKER SERVICE, INC. on a 2004 Toyota DBS, VIN # 5TBDT44154S460009.
AAAA Wrecker Service, Inc., Appellant,
v.
Oklahoma Tax Commission, Appellee.
No. 107,456. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 4.
Court of Civil Appeals of Oklahoma, Division No. 4.
July 7, 2010.
Certiorari Denied October 18, 2010.
*579 David Dunlap, Dunlap Law Firm, Oklahoma City, OK, for Appellant.
Marjorie Welch, Interim General Counsel, Sean R. McFarland, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.
JERRY L. GOODMAN, Judge.
¶ 1 Appellant AAAA Wrecker (AAAA) seeks review of the Oklahoma Tax Commission's (OTC) order finding that AAAA was only entitled to obtain a "junk" vehicle title rather than a "salvage" vehicle title. Based on our review of the facts and applicable law, we reverse and remand with directions.

FACTS
¶ 2 A 2004 Toyota DBS (Tundra pickup), when first registered in Oklahoma was issued a "rebuilt vehicle" pursuant to 47 O.S.2001 and Supp.2009, § 1105(B)(3). It was later stolen.
¶ 3 Columbia National Insurance Company (Columbia) after paying the loss claim, issued an "Automobile Loss Notice" indicating the vehicle's loss of value as 100%. On December 19, 2008, OTC issued Columbia an "unrecovered theft" title pursuant to § 1105(B)(7).
¶ 4 On December 31, 2008, the stolen Tundra was found in Oklahoma City. The Oklahoma City Police Department requested AAAA to tow the vehicle. AAAA stored the Tundra for one year, incurring storage fees. AAAA sought to recover its towing and storage fees by foreclosing on the title and selling the truck at public auction, pursuant to 42 O.S.2001 and Supp.2008, §§ 91 through *580 132. AAAA published notice of the sale to Columbia, which demanded return of the vehicle without compensating AAAA or making any further efforts to recover the vehicle. AAAA sold the truck to a third party and requested a "salvage" certificate of title to complete the sale. OTC refused to issue a salvage title unless AAAA provided another statement of loss issued by Columbia which showed the loss of value of the vehicle to be less than 100%. Columbia refused to provide the amended statement and OTC refused to issue a salvage title. OTC's position is that the loss remains at 100% until it is notified otherwise; thus it can only issue a junk title. AAAA sued to force OTC to issue a salvage title so it can complete the sale of the truck and recoup its storage fees.
¶ 5 An administrative law judge (ALJ) conducted an evidentiary hearing. The truck was subsequently inspected. It was found operable and in "good" condition except for minor body damage, an off-center steering wheel, and a faulty air bag light.
¶ 6 On June 8, 2009, the ALJ entered an order containing findings of fact, conclusions of law, and recommendations. The ALJ found OTC's issuance of a junk vehicle title was correct and denied AAAA's protest. On review by the OTC sitting en banc, it adopted the findings of fact and conclusions of law entered by the ALJ and entered judgment accordingly, resulting in this appeal.

STANDARD OF REVIEW
¶ 7 Title 75 O.S.2001, § 322 sets forth those situations in which the District Court and this Court can set aside or modify the order of an administrative agency. It provides in pertinent part:
(1) In any proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law, or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
¶ 8 Appellate courts review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. Dugger v. State ex rel. Oklahoma Tax Comm'n, 1992 OK 105, ¶ 9, 834 P.2d 964, 968. Adjudicatory orders will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error. Id.
¶ 9 In determining whether an administrative agency's findings and conclusions are supported by substantial evidence, the reviewing court will consider all the evidence including that which fairly detracts from its weight. State ex rel. Cartwright v. Oklahoma Corp. Comm'n, 1982 OK 11, ¶ 15, 640 P.2d 1341, 1347; El Paso Natural Gas Co. v. Corporation Comm'n, 1981 OK 150, ¶ 9, 640 P.2d 1336, 1338. However, great weight is accorded the expertise of an administrative agency. On review, a presumption of validity attaches to the exercise of expertise. An appellate court may not substitute its judgment for that of an agency, particularly in the area of expertise which the agency supervises. Denney v. Scott, 1992 OK 134, ¶ 8, 848 P.2d 1142, 1143; Abstracts of *581 Oklahoma, Inc. v. Payne County Title Co., 1992 OK 13, ¶ 13, 825 P.2d 1334, 1339; Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ. 1981 OK 29, ¶ 10, 626 P.2d 316, 320.
¶ 10 However, an administrative agency order interpreting law is reviewed using a de novo standard. Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 8, and n. 5, 33 P.3d 302, 305. It has been noted that "an administrative agency's statutory interpretation must be reasonable, and the agency cannot extend its power beyond that granted by statute." Henderson v. Maley, 1991 OK 8, n. 7, 806 P.2d 626, 633. Furthermore:
An administrative order is subject to reversal if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or if an order is entered based on an error of law, or if the agency's findings are clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record.
Tubbs v. State ex rel., Teachers' Retirement System of Oklahoma, 2002 OK 79, ¶¶ 16-18, 57 P.3d 571, 578-79 (citing City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, ¶¶ 12-13, 967 P.2d 1214, 1219).

THE APPLICABLE STATUTES
¶ 11 Title 47 O.S.2001 and Supp.2008, § 1105(A) defines six types of vehicles in Oklahoma and § 1105(B) defines seven types of titles which OTC may issue:
A. As used in the Oklahoma Vehicle License and Registration Act:
1. "Salvage vehicle" means any vehicle which is within the last ten (10) model years and which has been damaged by collision or other occurrence to the extent that the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of its fair market value,... immediately prior to the damage....
2. "Rebuilt vehicle" means any salvage vehicle which has been rebuilt and inspected for the purpose of registration and title;
3. "Flood-damaged vehicle" means a salvage or rebuilt vehicle which was damaged by flooding or a vehicle which was submerged at a level to or above the dashboard of the vehicle and on which an amount of loss was paid by the insurer;
4. "Unrecovered-theft vehicle" means a vehicle which has been stolen and not yet recovered;
5. "Recovered-theft vehicle" means a vehicle, including a salvage or rebuilt vehicle, which was recovered from a theft; and
6. "Junked vehicle" means any vehicle which is incapable of operation or use on the highway, has no resale value except as a source of parts or scrap and has an eighty percent (80%) loss in fair market value.
B. The owner of every vehicle in this state shall possess a certificate of title as proof of ownership of such vehicle.... There shall be seven types of certificates of title:
1. Original title for any motor vehicle which is not a remanufactured, salvage, unrecovered-theft, rebuilt or junked vehicle;
2. Salvage title for any motor vehicle which is a salvage vehicle or is specified as a salvage vehicle or the equivalent thereof on a certificate of title from another state;
3. Rebuilt title for any motor vehicle which is a rebuilt vehicle;
4. Junked title for any motor vehicle which is a junked vehicle or is specified as a junked vehicle or the equivalent thereof on a certificate of title from another state;
5. Classic title for any motor vehicle, except a junked vehicle, which is twenty-five (25) model years or older;
6. Remanufactured title for any vehicle which is a remanufactured vehicle; and
7. Unrecovered-theft title for any motor vehicle which has been stolen and not recovered.
Application for a certificate of title, whether the initial certificate of title or a duplicate, may be made to the Tax Commission or any motor license agent....
¶ 12 Further, relevant to this appeal is § 1105(O):

*582 The ownership of any unrecovered vehicle which has been declared a total loss by an insurer because of theft shall be transferred to the insurer by an unrecovered-theft vehicle title; provided, the ownership of any such vehicle which has been declared a total loss by an insurer licensed by the Insurance Department of the State of Oklahoma and maintaining a multi-state motor vehicle salvage processing center in this state shall be transferred to the insurer by a salvage or an unrecovered-theft title without the requirement of a visual inspection of the vehicle identification number by the insurer. Upon recovery of the vehicle, the ownership shall be transferred by an original title, salvage title, or junked title, as may be appropriate based upon an estimate of the amount of loss submitted by the insurer.
¶ 13 OTC claimed without an estimate of loss showing less than a total loss, it was bound by § 1105(O) to issue only a junk title.

ANALYSIS
¶ 14 AAAA's primary argument is that § 1105(O) does not provide OTC a legal basis to issue a junk vehicle title, but rather creates an exception to acquiring title which applies only to insurance companies. First, it notes that in certain cases, before an insurance company can be issued title, a visual inspection of the car and its VIN number is required. However, § 1105(O) creates an exception to this rule. AAAA argues the language specifically addresses a situation where an insurance company who insures a vehicle which is later stolen and pays for its loss may first obtain an "unrecovered theft" title without the necessity of a VIN inspection. ("[P]rovided, ... any ... vehicle which has been declared a total loss by an insurer... shall be transferred to the insurer by a salvage or an unrecovered-theft title without the requirement of a visual inspection of the vehicle identification number by the insurer." § 1105(O)) If the stolen vehicle is later recovered, an insurer may be issued an original title, a salvage title, or a junk title, depending on the insurer's opinion of the value of the now-recovered vehicle.
¶ 15 AAAA argues § 1105(O) applies only to an insurer in order to facilitate the swift transfer of title, but that it should not be interpreted to apply to a non-insurer seeking title to a now-recovered vehicle. Otherwise, the very situation now before us arises: that a towing company, seeking to sell the vehicle, is at the mercy of a non-cooperative insurance company which refuses to amend its statement of loss, thus preventing the towing company from completing the sale. AAAA contends OTC's choice to issue a junk title under § 1105(O) is erroneous as a matter of law. We agree and reverse.
¶ 16 We begin by repeating the statutory definitions of "junked vehicle" and "junked title" as set out in 47 O.S.2001 and Supp. 2008, §§ 1105(A)(6) and (B)(4):
"Junked vehicle" means any vehicle which is incapable of operation or use on the highway, has no resale value except as a source of parts or scrap and has an eighty percent (80%) loss in fair market value.
The only vehicle which may be issued a junked title is a junked vehicle:
Junked title for any motor vehicle which is a junked vehicle or is specified as a junked vehicle or the equivalent thereof on a certificate of title from another state;
¶ 17 According to the undisputed facts in this case, as found by the ALJ, the Tundra in question does not meet the definition of junked vehicle. The evidence shows it to be in good condition, operable, and with a resale value as demonstrated by its tentative sale at auction. Significantly, by OTC's tacit admission, it could have been issued a salvage title but for the lack of a loss statement by Columbia. OTC's choice of title it offered was not based on a determination of the true nature of the vehicle, but rather by a strained interpretation of law. OTC's issue of a junked vehicle title to a vehicle which does not meet that definition was erroneous as a matter of law.
¶ 18 We next address the interpretation given to 47 O.S.2001 and Supp.2008, § 1105(O) set out below in relevant part.
The ownership of any unrecovered vehicle which has been declared a total loss by an insurer because of theft shall be transferred *583 to the insurer by an unrecovered-theft vehicle title; ... transferred to the insurer by a salvage or an unrecovered-theft title without the requirement of a visual inspection of the vehicle identification number by the insurer. Upon recovery of the vehicle, the ownership shall be transferred by an original title, salvage title, or junked title, as may be appropriate based upon an estimate of the amount of loss submitted by the insurer.
¶ 19 OTC's interpretation of this statute led it to conclude it could only issue a junk title and must therefore deny AAAA's request for a salvage or original title.
¶ 20 We disagree. We hold this section only applies to titles issued to an insurer; it does not apply to titles issued to non-insurers. Read in context, this provision (a) requires title to a non-recovered stolen vehicle be given to the insurer only in the form of an unrecovered theft title; (b) waives the requirement of a visual inspection of the VIN before transferring title (obviously because the vehicle is unavailable for inspection) and; (c) requires an insurer, upon recovery of the stolen vehicle, to relinquish the unrecovered theft title and receive instead either an original, a salvage, or a junked title, depending upon the amount of loss incurred by the insurer. We reject the application of § 1105(O) to a non-insurer who has not previously been issued an unrecovered theft title who now seeks a different title. To hold otherwise results in an absurdity wherein, as here, a stolen vehicle is recovered in otherwise good condition, and yet its new bona fide purchaser cannot acquire any title other than a junk title (which in most instances renders the vehicle unmarketable) simply because an insurer who paid the original loss cannot or will not revise its loss statement.
¶ 21 AAAA sought title pursuant to the provisions of 42 O.S.2001 and Supp.2008, §§ 91 through 132. Those provisions provide procedures by which a towing company such as AAAA may recover its storage costs by the perfection and foreclosing of its lien. These provisions do not, however, specify the type of title to be given a subsequent bona fide purchaser for value. For guidance, one must refer back to 47 O.S.2001 and Supp. 2008, § 1105, which specifies the seven types of vehicle titles which may be issued by the OTC.
¶ 22 Those titles include: Original (B)(1); Salvage (B)(2); Rebuilt (B)(3); Junk (B)(4); Classic (B)(5); Remanufactured (B)(6) and; Unrecovered-theft (B)(7). Since under these facts AAAA is not entitled as a non-insurer to an Unrecovered-theft title, and the vehicle in question does not meet the statutory definition of Junk or Classic, and AAAA is not entitled to an Original title, it stands to reason the only types of title for which this vehicle qualifies is Salvage, Rebuilt, or Remanufactured.

CONCLUSION
¶ 23 We conclude the ALJ erred as a matter of law in the interpretation of the law, and OTC erred in adopting the findings of the ALJ, and denying AAAA's request for a title other than that of a junked vehicle. We reverse and remand with directions to OTC to issue an appropriate title consistent with this opinion.
¶ 24 REVERSED AND REMANDED WITH DIRECTIONS.
GABBARD, P.J., concurs; RAPP, J., not participating.